*PHILANDER SEWARD, survivor of WILLIAM SEWARD and PHILANDER SEWARD, plaintiff in error, *against* JAMES JACKSON, *ex. dem.* JOHN B. VAN WYCK, defendant in error.

A special verdict, to enable a court of error to act upon it, must find facts, not merely state the evidence.

And where the jury find the evidence merely, as that such a witness was sworn, and testified to certain facts, and that other facts were admitted by counsel, &c., without stating their own conclusions, the court of errors cannot notice the matters so found; and if other facts are properly found, and judgment in the court below be rendered contrary to the facts so properly found, the judgment will be reversed, though the evidence and admissions, &c., found as such, might have warranted a verdict and judgment the other way. Per JONES, chancellor, who goes fully into the case, and bases his opinion on the defect in the special verdict.

But if a special verdict, on a mixed question of law and fact, find facts from which the court can draw clear conclusions, it is no objection to the verdict, that the jury have not themselves drawn such conclusions, and stated them as facts in the case. In the Exchequer Chamber, *Monkhouse v. Hay,* (8 Price, 256,) a summary of which is given in note (*a*) at the close of the chancellor's opinion.

The practice of the supreme court in reviewing the decisions of jurors on a case, &c., explained and approved. Per JONES, chancellor.

How such case should be changed into a bill of exceptions or special verdict, where the right is reserved. Per JONES, chancellor.

A judgment in ejectment, for the plaintiff, on a single demise, contained in a single count, that he recover his term in two parcels of land, being erroneous as to one parcel, is so *in toto.* Per SPENCER, senator.

For a court of error cannot divide a judgment, which is entire, reversing in part, and affirming it in part. Per SPENCER, senator.

Otherwise, perhaps where the declaration in ejectment contains more than one count. Per SPENCER, senator.

Difference between ancient and modern certainty required in a declaration in ejectment. Per SPENCER, senator.

Possession is now taken according to proof at the trial. Per SPENCER, senator.

Plaintiff may take a verdict for certain described premises, and as to other described premises, enter a verdict for the defendant. Per SPENCER, senator.

A father, having guarantied the payment of a judgment against S., who had lands bound by the judgment, which, at a fair value, might well be supposed sufficient to pay the judgment, then disposed of all his real estate, by giving to his son a full covenant deed in fee, and taking from the son a

bond to himself (the father) to pay an annuity for his life. The son, also, in consideration of the deed, gave separate bonds to two of his sisters for their portions; after which, the property of S. was exhausted by executions *upon the judgment, and proved insufficient *to pay the judgment*; and the father was sued upon his guaranty, and had judgment against him on execution, upon which the real estate thus conveyed for the benefit of his children, was sold. In ejectment by the purchaser, the jury found against all actual fraud in the parties. *Held*, that the conveyance was not legally fraudulent as against the creditor on the guaranty. · Per SPENCER, ALLEN and STEBBINS, senators; and per JONES, chancellor. *Quere.*

A bond or other security, by a purchaser, for the purchase money of land, is a valuable consideration. Per SPENCER and ALLEN, senators.

So, to secure an annuity or rent. Per SPENCER, senator.

One gives his bond for the purchase money of land, which another pays. This does not raise a resulting trust in favor of the latter. Per SPENCER, senator.

A guarantee is to be deemed a creditor to the guarantor, on a covenant of guaranty, even before it is broken. Per SPENCER, senator; STEBBINS, senator, contra. · ·

A special verdict should find all the facts; and a bill of exceptions should admit them. Per SPENCER, senator.

Where a special verdict omits to find the facts, on error it was suggested that the defect might be remedied by reversing the judgment, and directing a *venire de novo*. Per SPENCER, senator.

To make a deed voluntary, it must be without any, the least valuable consideration. Per SPENCER, senator.

Where one, being indebted, sells his lands, taking security, which he gives to others without valuable consideration, though the sale be valid, yet the security may be reached in the hands of the donees, at the suit of the creditor, in a court of equity. Per SPENCER, senator.

A sale of land reserving a rent or annuity, is not void as to creditors, within *Mackie* v. *Cairns*, (5 Cowen, 547,) as a reservation of part of the subject sold. Per SPENCER, senator.

Where a conveyance of land is upon any, the least valuable consideration, the question whether it be fraudulent as to creditors, belongs exclusively to the jury. Per SPENCER, senator.

A conveyance from a parent to a child, in consideration of love and affection, is not absolutely void as to creditors; but the presumption that it is fraudulent, may be repelled by circumstances. Per SPENCER, senator, citing *Hinde's Lessee* v. *Longworth*, 11 Wheat. Rep. 213.

Even admitting this doctrine to be otherwise as to present subsisting debts, yet an unbroken guaranty for the payment of a debt, a warranty of title to land, and the like, are not subsisting debts within the meaning of the cases, as to which a voluntary conveyance by the guarantor, warrantor, &c., would be fraudulent *per se;* but in such case actual fraud should be proved. Per STEBBINS, senator.

A conveyance, or settlement, in consideration of blood and natural affection, though by one indebted at the time, is *prima facie* only, and not conclu-

Seward
v.
Jackson.

[*408]

sively fraudulent. Conclusion, after a very ful review of all the English and American cases on the point, per ALLEN, senator.

· ON error from the supreme court. The action in the court below was by James Jackson, on the demise of John *B. Van Wyck, against the two Sewards, defendants, to recover two pieces of land; the one a farm of about 230 acres with a small piece of adjoining land, (about two acres,) including a house and garden, formerly constituting part of, but sold and separated from the larger piece. Both were situate in the town of Fishkill, Dutchess county.  ·

The facts, so far as they relate to the larger piece of land, are stated in the report of this case in the court below, (5 Cowen's Rep. 67,) except that the conveyance from the sheriff under which the lessor of the plaintiff claimed was, at p. 69, printed as in 1820, whereas it should have been 1822; and the time of exhausting the property of William Seward, junior, is stated, at p. 68, as in February; whereas it should have been in June, 1819. After these verbal corrections, the case need not be stated farther in this place.

The judgment in the supreme court was general, for the plaintiff below; and one question made here was, whether it should not be reversed *in toto*, inasmuch as it was clearly erroneous in respect to part; the two acres. This branch of the case will be found stated in the commencement of the opinion of Spencer, Senator, post.  ·

The judgment was, as will be seen by the report referred to, rendered for the plaintiff below on a case, which was turned into a special verdict, in which form it came here. One question made by Jones, chancellor, it will be perceived, was on the frame of the special verdict; yet I do not give its form, for I think the opinion of the chancellor, which commences with this branch of the case, will be found sufficiently descriptive.

The reasons for the opinion of the court below, were assigned as in 5 Cowen, 70 to 73, per SUTHERLAND, J.

The cause was argued in September, 1826, at the session of this court in the city of New York, by

*J. Tallmadge, T. A. Emmet,* for the plaintiff in error and

*T. J. Oakley,* for the defendant in error.

*But it was so fully discussed by the learned chancellor and senators, who delivered opinions upon its various branches, as to present every argument and authority of the counsel, which can be deemed material.

JONES, Chancellor. The writ of error in this cause purports to be upon a special verdict in an action of ejectment. Upon looking at the record, it appears that the jury have found the whole of the evidence produced to them, with an account of what took place at the trial, and sent the entire proceedings at the circuit, in the form of a special verdict, to the supreme court for their consideration : and the first question that presents itself is, whether this record can be regarded as a special verdict, upon which this court can act? <span class="margin">Whether there be any special verdict.</span>

It is of the essence of a special verdict, that it should be a finding by the jury of the facts on which the court is to pronounce the law, and not the evidence of the facts upon which it is the province of the jury to adjudicate. The jury is to receive the evidence under the direction of the judge who presides at the trial, and to find the facts in issue between the parties, according to their deliberate judgment upon that evidence. To the court it belongs to apply the law to the facts ; but the court has no jurisdiction to decide upon evidence, or to enter into any question of fact that may arise in a cause. This is a cardinal rule in the law of special verdicts, which has always been observed and enforced by courts of law, and ought, in my opinion never to be relaxed. It defines the line between the jurisdiction of the court and the jury, with unerring accuracy ; and so long as it continues to prevail, and is preserved in its purity and integrity, it will keep each in its proper sphere. But should it ever be dispensed with or relaxed, the boundary between the provinces of the court and the jury will be unsettled ; and the two jurisdictions which our excellent system of jurisprudence intended to <span class="margin">It is of the essence of a special verdict, that it should find facts; not the evidence of facts.</span>

keep separate and distinct, will be blended together; and questions of fact which belong to the jury, be brought for decision to the court, whose province it is to settle the *law. The inconvenience of this innovation might not be so sensibly felt by the supreme court, as it must be by this court; for that court has a supervisory power over the verdicts of juries, which it exercises for the advancement of justice, and with great benefit to suitors, by setting aside the verdict of the jury when against evidence, or otherwise erroneous and unjust; and by granting new trials,

Practice of S. C. in reviewing the decisions of juries,

directing nonsuits, or otherwise disposing of the matter, as the merits of the case may be found to require. This jurisdiction cannot be exercised, without having the evidence which was before the jury, brought before the court: and that evidence, in such cases, comes up by affidavit, or in a case made by the parties, and settled by the judge. To

on affidavits or case made.

that court too, it belongs to render judgment upon the verdicts of the jury before the circuit judges, and to decide the questions arising upon the evidence, and upon the merits, and brought to that court for decision. Regularly these matters are to come before that court in the form of special verdicts, bills of exceptions, or demurrers to evidence; but as the supreme court has original jurisdiction, and the immediate cognizance of the causes in which the points arise, a practice has, for the convenience of suitors, been introduced, and has long prevailed, to dispense with the more regular forms, and bring the matters in dispute before the court for decision, upon a case reserved at the trial, or made up by consent between the parties. This practice has been so extended, as very often to make the case a substitute for the verdict; and the utility and conveniency of the substituted case to the parties, in enabling them to combine in the same case, for the decision of the court, all questions of law and of fact that the merits of the cause involve, and all points of evidence that could be made by either party at the trial, has brought it into very general use in that court. The objection to it, is that it substitutes the court for the jury, to try the questions of fact in the cause. But as both parties consent to waive

the right to trial by jury, neither has any cause of complaint; and all questions both of law and fact, being open *and undetermined at the time the case is made the parties are induced to consent to a course of proceeding, which gives to each the benefit of all the objections he makes to the demands or defence of the other, and is equal in its advantages and disadvantages to both. If the parties are content to abide by the decision of the supreme court, they repose themselves upon the case agreed upon between them. But if they contemplate ulterior measures, in given events, for the review of the judgment, they reserve the right to turn the case into a bill of exceptions or special verdict, to enable them to bring the questions to this court for revision. Such has been the course in this case.

The record before us disclosed the fact, that a verdict was taken for the plaintiff, subject to the opinion of the supreme court, on a case to be made, with leave to either party to turn it into a special verdict; and the history of the trial incorporated in the record, and imputed to the jury as the special verdict found by them, bears internal evidence of conclusive force, that it is, in fact, the case made by the parties, with very little more of even the form of a special verdict, than the formal conclusion attached to it.

Can such a record be received by this court? The case which was made for the supreme court, and is now engrafted upon this record in the form it now assumes, is a report by the jury of the evidence at the trial, and not a return to the court of the facts found by their verdict. In the supreme court, this procedure produced no embarrassment; for that court having original jurisdiction of the cause, and being substituted by consent for the jury, had the power to decide upon questions of fact, as well as points of law; and were at liberty to draw inferences and conclusions from the evidence disclosed in the cause; and upon the facts thus found by them, as the just deductions from the evidence, to pronounce the law.

But this is a court of appellate jurisdiction. The facts must appear on the record sent to us, upon which our

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

Of turning case into bill of exceptions or special verdict.

Form of special verdict in this case.

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

The court of errors cannot adjudicate upon evidence, even by consent of parties.

judgment is to be given. The court possesses no jurisdiction *to adjudicate upon evidence, and cannot perform the office of a jury, by drawing the conclusions of fact from the evidence given at the trial; nor is it in the power of the parties, by any consent they can give, to confer such a jurisdiction upon this court, the organization and power of which, are settled by the constitution of the state. We sit as a court for the correction of errors in the judgments of the supreme court. We are to decide in the last resort, (as respects our state system of jurisprudence,) upon questions of law which have been adjudicated upon by that court; and in exercising such appellate jurisdiction, this court must look to the facts on which the supreme court gave their judgment. No regard can be paid by this court to any matters of evidence that may have been before that court. If the parties, for their own convenience, have agreed upon a case, by which they have spread before the judges of the supreme court the evidence in the cause, and submitted the question, both of fact and law, which that evidence involved to that court, that case, when turned into a special verdict for the consideration of this court, must present the

How a case should be turned into a special verdict.

facts which the judges, acting as jurors, have found, and on which the judgment was given, and not the evidence contained in the case from which the facts were so found by the court. As the jury, when the special verdict is given by them, must draw their own conclusions from the evidence, and find the facts which that evidence, in their opinion, proves; so the judges of the supreme court, when the evidence is submitted to them, must form their conclusions from the evidence so submitted; and, in turning the case into a special verdict, must make that verdict consist of the facts which they find that evidence to establish, and not the evidence contained in the case, and by which the facts are proved. It cannot be admissible for the parties to introduce the case itself into the record, as a substitute for the special verdict, which the judges, or the parties under their direction, were to form from the case.

Why was not the case, in this cause, turned into a regular special verdict? The only assignable reason is, the

*difficulty of settling the facts. The parties could not agree upon them, and both parties being indisposed to appeal to the supreme court to find the facts for them, they agreed to refer the evidence to this court, for us to draw the conclusions of fact from it for ourselves. This was, in effect, avowed on the argument; but though an excuse for the parties, it is not sufficient to give us the jurisdiction, obviously intended to be conferred upon us.

If a procedure so irregular, and so subversive of all certainty, and of the settled distinctions between the jurisdiction of the court and the jury, should be allowed in this case, a precedent would be set, which must be followed in all subsequent causes. The consequence is easily foreseen. Every case made for the consideration of the supreme court, where the right is reserved to turn it into a special verdict, will be brought by the failing party to this court, upon the case itself, for re-examination; and we must assume the same jurisdiction which the supreme court possess in deciding upon it, or we cannot do justice between the parties.

. This court, then, would become, in effect, a court of original jurisdiction, deciding questions of fact upon the evidence, as well as questions of fact upon the facts; a jurisdiction which would destroy the design and usefulness of an appellate jurisdiction; and open sources of litigation which would overwhelm the court.

The rule that the jury, in a special verdict, must find facts and not evidence of facts, is well established and familiar to jurists. (Hob. 262; 1 Cain. Rep. 60; 1 Archb. Pr. 191; 3 T. R. 198; 1 Hen. & Munf. 236.) The finding, by a jury, of a conversion in the action of trover, is a striking instance of the application of the rule, and illustrates the principle on which it rests. A demand and refusal in that action, is evidence of a conversion; and, if unexplained, and not repelled by other testimony, it is conclusive, because the jury are to presume that the defendant has converted the goods to his own use, which he refused, on demand of the true owner, to restore; but yet *it is only evidence; and if it be found, by special verdict,

[*414]

ALBANY,    that the plaintiff requested the goods of the defendant, and
Dec. 1826.   he refused to deliver them up, it is not a finding upon
—————   which the court can adjudge a conversion. 10 Co. 57;
Seward
v.        *Case of the Chancellor of Oxford*; Hob. 187; Bulstr. 308;
Jackson.    Cro. Eliz. 495; 3 Burr. 1243.)

Argument      But it is said, that if the evidence gives a violent pre-
that finding sumption of the fact, or in other words, if the matter ap-
facts, which pearing in the special verdict be such as to lead necessarily
create a vio-
lent presump- to a conclusion, which admissible evidence could repel,
tion, is good it shall be sufficient, and supply the place of the fact. Sup-
as a special
verdict.      pose such a case to form an exception to the general rule.
Is this such a case?

Whether this    The leading question between the parties in this cause,
be such a case. at the trial, appears to have been, whether the deed of
settlement from the elder Seward to Philander, his son,
was fraudulent and void as against the lessor of the plain-
tiff, as a creditor of Seward, the grantor? The jury say
that actual fraud had not been shown, and they find a ver-
dict for the defendant on the facts before them, upon that
point. But whether the conveyance was fraudulent in law,
and void as to the plaintiff's claim against W. Seward, they
submit to the court upon the matters set forth in the case.
I pass by this distinction, thus made in a court of law, on
a question of fraud before a jury, between actual fraud and
fraud in law, or constructive fraud, and proceed to look
into this record, to see what the case, as professed to be
turned into a special verdict, does contain. It consists of
Farther parti- the testimony of Benjamin Everitt, set forth at large, an
culars of the
special ver- exemplified copy of the record of a judgment in the S. C.
dict.       in favor of the lessor of the plaintiff against Wm. Seward,
on a written guaranty by him, that a certain judgment
against his son, W. S. jun., assigned by him to the lessor,
was due and collectable, an exemplified copy of a writ of
*fi. fa.*, issued on that judgment, and a deed from the she-
riff of Dutchess to the lessor for the premises in question,
on a sale under the writ of *fi. fa.*, as the evidence on the
part of the plaintiff; and with which evidence this spe-
cial verdict represents the plaintiff to have rested his
[*415]     *cause. The defendant is then made to enter upon his

defence, which appears to consist of the following matters: He first produced a deed for the premises in question, (prior in date to the judgment on the guaranty, but subsequent to the guaranty itself,) from W. Seward, the father to Philander Seward, the son, for the ostensible consideration of $10,000, acknowledged and recorded on the day of its date; and then offered to produce testimony to shew that W. Seward, the younger, before the assignment of the judgment against him to the lessor, owned real estate in this state, obtained by him from the lessor, on an exchange of property between them, to a greater amount in value than the amount of the judgment so assigned and guarantied, and out of which that judgment might have been collected by the lessor; which testimony was objected to, but admitted; and is set forth at large in the verdict.

The defendant then offered, the jurors say, to prove that the deed of the premises in question, from the elder Seward to his son Philander, was made and given by the elder Seward, who was then very aged, feeble and infirm, by way of making a settlement of his property upon his children; and without any intention to defraud his creditors; and that, on giving the deed to his son, he took back from him a bond to secure an annuity to himself and wife; and that the son, at the same time, gave bonds to his sisters, to secure them certain sums as their portions of the estate of their father. That this testimony was objected to, but admitted, and it is also set forth at large in the verdict.

The jurors then proceed to set forth the testimony at large, of a witness produced on the part of the plaintiff; and after stating an admission of counsel on the point of fraud, they say that actual fraud had not been shown; and they find the verdict in favor of the defendant upon the facts before them, on the question of actual fraud; but whether the conveyance was fraudulent in law, and void as to the plaintiff's claim against Wm. Seward, and whether *or not, upon the whole matter, the defendant was guilty of the trespass and ejectment, they say they are ignorant, and pray the advice of the court thereon.

[*416]

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

From this abstract of the special verdict, it will be seen that the jury, instead of deciding the general question of fraud, have attempted to divide it; and, after declaring by the verdict, that there was no actual fraud in the transaction, have referred the whole evidence before them to the court, to say whether there was any other fraud to vitiate the settlement. This proceeding of the jury appears to have been grounded upon the confession of the plaintiff's counsel, which is inserted in the verdict, and forms part of it; and the counsel on the argument conceded that the elder Seward is not chargeable with a fraudulent intent in making the sale to his son Philander. The plaintiff in error contends that this concession, supported and confirmed by the verdict of the jury, is conclusive against the lessor's right to recover; insisting that there can be no fraud without a fraudulent intent. But the defendant in error, whilst he absolves the grantor from intentional fraud, impeaches the deed of conveyance he gave to his son, as fraudulent and void in law, against him as a creditor of the elder Seward; and insisting that he is to be regarded as a prior creditor, he objects to the settlement

Points of law made by counsel on each side.

as fraudulent in law and void; *first*, because it is voluntary; *Secondly*, because it purports to be an absolute deed for valuable consideration, when no consideration was paid for it, and it was, in fact, a mere testamentary disposition, and gift or settlement on the family; and *thirdly* as being void on account of the reservation of the annuity of $500 for the benefit of the grantor. On the other hand the plaintiff in error insists, that the entire question of fraud has been put at rest by the verdict; but that if it is for any purpose, open, on the distinction between fraud in law and fraud in fact, the conveyance was not fraudulent in law, because it was not voluntary, but founded on sufficient inducements and stipulations; that the *quo animo* was open

[*417]

to inquiry, and settled by the verdict; and that *Philander, the grantee, is to be considered a *bona fide* purchaser, and for valuable consideration paid and secured.

These are the points presented to this court, by the parties, for adjudication; and I now ask, what facts have the

jury found so as to enable us to adjudicate upon them? It is admitted that they have not found the fact of fraud, either in the elder Seward or his son Philander. They have negatived all intention of fraud on the part of the father, and impute no such intention to the son. Is this court, then, at liberty to intend or deduce fraud, where not found by the jury, from circumstances, as an inference of law? In the case of *Meriel Littleton*, (cited in 10 Coke, 56,) it was unanimously resolved, "that forasmuch as no fraud is found by the jury, the court could not adjudge the feoffment to be fraudulent; and although the jury finds circumstances and presumption to incite the jury to find fraud, yet it was but evidence to the jury, and not any circumstance upon which the court could adjudge fraud; and the office of the jurors is, to adjudge upon the evidence concerning matters of fact, and themselves to give the verdict, and not to leave matter of evidence to the court to adjudge, which does not belong to them."

But if, as contended upon the authority of other cases, the question whether fraud or not is a question of law for the court to decide on the facts of the case, it is material to inquire what facts this case presents to guide our decision? The defendant in error avers the deed to be voluntary; but the plaintiff in error controverts that averment, and contends that it was founded on sufficient consideration. Have the jury found the fact, either that it was a voluntary conveyance, or that it was founded on sufficient consideration? They have reported to the court the evidence before them, on the point from which the counsel for the defendant in error infer the fact that it was a voluntary deed, and from which the jury perhaps might have drawn the same conclusion as the judges of the supreme court, acting as jurors in determining a question of fact, probably did; but it is evidence only which appears upon the record before us. The testimony in substance is, *that the father executed the deed to his son as an absolute conveyance; and that the son, as the consideration for it, gave the father a bond in $10,000, to secure him an annuity for life; and a bond to each of his two sisters for upwards of

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*Meriel Littleton'z case*, cited
1) Coke, 56.

[*418]

$2,000 apiece.   And the plaintiff in error has a right to say, that a jury would, on that evidence, coupled with the other circumstances of the case, find the deed to be for sufficient consideration.   Besides; the plaintiff in error insists that the son had no knowledge of the covenant or guaranty on which the judgment was obtained against the father, and is therefore to be regarded as a *bona fide* purchaser.   The jury have reported the evidence of one witness on the point of notice; but they have not found the fact either way, whether the plaintiff in error had notice of the debt or not.

Again, it was objected to the deed, that it expresses a false consideration, and that the grantor continued in possession of the premises; and those circumstances were strongly pressed as *indicia* of fraud; and the objection was repelled, and the deed defended with equal confidence upon the ground that its verity, and the actual possession of the grantee under it, were supported by the testimony; yet neither the fact of the continuance of the father in possession, nor the fact of the son's possession, nor the fact of the truth or falsehood of the consideration expressed in the deed, is found by the jury.   They inform the court that Everitt, a witness, testified before them, that old Mr. Seward was feeble and infirm, and the principal part of the management of the farm devolved on Philander, the son by whom it was conducted, and who lived upon the farm with his father until his death; that Philander the son, lived with, and managed the farm under the father, from 1808 to 1818, during which period it was understood that the farm belonged to the father; but that about the 1st of May, 1818, it was understood that the father had made over the farm to the son; and, from that time, the son had the charge of all the business of the farm, in a different way from what he had before, and acting in all things as the owner.   The testimony of *Thankful Seward, the widow, is also given, who states that the son, after the deed, managed every thing for himself.   This constitutes the whole substance of the evidence on the fact of possession; and, as regards the consideration of the deed, the widow

[*419]

and Ackerman are the only witnesses who testify to the
terms of the settlement, or the consideration actually given
by the son to the father, for the premises.   Their testimony
is given at large, and they state the consideration to have
consisted of the bonds to the father and sisters of the gran-
tee.   But the jury draw no conclusion of their own, from
the testimony of these witnesses, nor find any fact as es-
tablished by it.   In the language of the court, in the case
cited from Coke, it was the office of the jury to adjudge
upon the evidence concerning matters of fact, and to give
their verdict thereon ; and not to leave matters of evidence
to the court to adjudge.   In this verdict, the jury has left
the evidence to the court, to adjudge concerning matters
of fact.   But we have no jurisdiction of such a subject,
and cannot settle the question which that evidence pre-
sents.   The same difficulty occurs in every branch of the
case, with the exception only of the question of actual
fraud.

The whole of the special verdict, with the exception of
the documentary evidence, consists of the testimony of
witnesses, reported as they gave it.   If we adjudicate upon
this record, we must found our judgment, so far as facts
are concerned, upon the evidence of the witnesses, and not
upon the finding of the jury.   We must adjudge for our-
selves what facts that evidence proves ; and then make
those facts the basis of our judgment on the question of
law ; and if the conclusions of fact which we draw from the
evidence, should happen to differ from the conclusions
drawn from it by the supreme court, we might reverse the
judgment for erroneous conclusions on questions of fact,
without disagreeing with them on the law applicable to the
case.

But the facts established by the documents, may, perhaps,
be said to be found by the jury ; and it was intimated *on        [*420]
the argument, that these alone, rejecting all the other mat-
ters in the special verdict as irrelevant and immaterial,
were sufficient to entitle the defendant in error to judg-
ment.

Assuming, then, that the documentary facts are suffi-

ALBANY,    ciently the finding of the jury, for this court to act upon,
Dec. 1826.  what are those facts? To state them most favorably to
Seward     the defendant in error, they are, that the defendant in error,
v.         in 1820, recovered a judgment against the elder Seward,
Jackson.
           for about $2,700, upon his covenant or engagement, entered
Assuming the   into and made on the 6th of November, 1817, whereby he
'ocumentary
ts to be well  covenanted and agreed, that a judgment against his son,
.ound, how the
case stands.   assigned by him to the defendant in error, was due and
What  they collectable; that an execution was issued on that judgment,
are.       and that the sheriff sold and conveyed the farm in question,
           under that execution, to the defendant in error; and that
           the same premises were, by deed of the 16th of April,
           1818, granted and conveyed by the elder Seward to his son
           Philander, the plaintiff in error, and that the consideration
           expressed in the deed was $10,000; that it contains full
           covenants, and was acknowledged and recorded on the day
           it bears date.

           Take these facts in connexion with the verdict of the
           jury, negativing the imputation of fraud in fact to the elder
           Seward, and can the court adjudge the deed to the plaintiff
           in error, to be fraudulent and void against the defendant in
           error, as a judgment creditor of the grantor? If we are to
           be limited to these facts, there is but one of the several ob-
           jections taken by the defendant in error to the validity of
           the deed, that can be urged; and the foundation of that one
           would be, at best, but slender. The objections on the
           ground of the falsity of the consideration expressed in the
           deed, the reservation of the annuity for life to the grantor,
           and his continuance in possession, rest upon the testimony
           of the witnesses; and if that evidence is expunged, those
           objections must disappear.

[*421]         The remaining objection is, that the deed is fraudulent in
The sole ob- law and void, because it is a voluntary conveyance, and the
jection which defendant in error is a prior creditor of the grantor. *This
can be enter-
tained is, that objection is urged on the authority of the case of *Reade* v.
the deed is *Livingston*, (2 John. Ch. Rep. 481,) as being so decisive
fraudulent in
law, being vol- that no evidence can be adduced to repel or explain it.
untary, and
operating      Suppose it to be so; the deed must be admitted or pro-
against a cre- ved to be merely voluntary, and the party who impeaches
ditor.

it, to be a prior creditor of the grantor, before the rule can be applied. If the judgment of the plaintiff in error against the elder Seward, is to be regarded as the debt, and not the previous covenant, he would be a subsequent and not a prior creditor; and if he is a subsequent creditor, he must, on the authority of *Reade* v. *Livingston*, show a fraudulent intent on the part of the grantor, in giving the deed, or he cannot avoid it; and this court could never impute a fraudulent intention to this grantor, as an inference or presumption of law from the facts, against the explicit finding of the jury upon the same facts, that there was no such fraudulent intent.

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*Reade* v. *Livingston*, (2 John. Ch. Rep. 481.)

But suppose the defendant in error to be, in judgment of law, a prior creditor; was the deed to the defendant in error a voluntary conveyance?

The whole finding of the jury on this point, if the testimony of the witness is to be disregarded, consists of the naked fact of the deed itself, which appears on the face of it to be a conveyance of the premises, by the father to the son for $10,000, with full covenants.

It surely cannot be intended, that a conveyance for the consideration of $10,000 is voluntary, because it is a deed from a father to his son. A jury might possibly be warranted, on the testimony of Everitt, and in the absence of proof of the payment of the consideration expressed to be given, in finding it a voluntary conveyance, or fraudulent and void. But a jury, without any other evidence than the deed itself, would exceed its legitimate powers in declaring it void; and this court surely could not, in such a case, adjudged it to be voluntary and fraudulent. It may be said, that the bonds of the son, proved by Ackerman, being written evidence, and speaking for themselves, are to be regarded as facts found by the jury, and not the mere evidence of the witness. Suppose them to be so; they *prove nothing of themselves, but the debts contracted thereby to the father and the sisters of the son. Taken in connection with the testimony, they would appear to constitute the consideration of the conveyance from the father to the son; and the jury might, on that evidence, have so

found the fact, or probably they might have been borne out in such finding by the correspondence of the dates of the instruments, and the relations in which the parties stood to each other and to the transaction. But this court cannot make the intendments, and draw the inferences necessary to connect the bonds with the deeds, which a jury might; or if the court could intend that the bonds were given as the consideration of the deed, the question of fact would still remain, whether the transaction was a purchase by the son, or a gratuitous settlement by the father; and which question it was the province of the jury to answer on the evidence before them. The counsel have discussed the point upon the evidence as a litigated question; and if the court decide it, they must put their decision, to some extent at least, upon the testimony of the witnesses, and not upon the facts found by the jury.

But if the deed could be regarded, upon the facts appearing on this record, as a testamentary disposition and gift by the father to his children, would that fact be of itself conclusive, or might it not be met and rebutted by evidence on the other side, or could the court pronounce it fraudulent and void on that evidence, or must not the question of fraud be submitted to a jury? I do not conceive it to be necessary to decide these questions in this cause; but I am not prepared to say that the court could, under such circumstances, adjudge the deed to be fraudulent. The case of *Reade* v. *Livingston*, was a decree of the court of chancery, and in that court the chancellor exercises the jurisdiction of a jury, as well as that of a judge. When sitting in that court, I have the jurisdiction to decide questions of fraud upon the evidence; but I should hesitate to act upon the principle, that a voluntary deed to children is absolutely void, as against creditors having debts owing to them at the time, and that no facts or circumstances *can be sufficient to repel the legal presumption of fraud; and when, in addition to my hesitation upon that point, I am called upon in a court of law, and of appellate jurisdiction, to adjudge a deed to be fraudulent without any verdict of a jury finding the fact of fraud, and against

*Whether a voluntary deed to children, by one indebted at the time, is absolutely, and in construction of law, fraudulent? Quere.*

[*423]

a verdict which negatives the existence of actual fraud, I cannot but distrust my powers, and am unwilling to act.

The supreme court of the United States, in the case of *Hinde's lessee* v. *Longworth*, (11 Wheaton, 199,) held, that a deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors; that the want of a valuable consideration is a badge of fraud; but that it is only presumptive, and not conclusive evidence of it, and may be met and repelled by other testimony. "If," say the court in that case, "it could be shown that the grantor was in prosperous circumstances, and unembarrassed; and that the gift to the child was a reasonable provision, according to his state and condition in life, and leaving enough for the payment of the debts of the grantor, the presumptive evidence arising from the want of a valuable consideration for the deed would be met and repelled." Other combinations of circumstances might produce the same effect, in repelling this presumptive evidence of fraud. It would be the duty of this court, before it pronounced its judgment, to look at the whole case, to determine whether the deed from the father to the son was voluntary, or for consideration; and, if voluntary, how far the other facts of the case would repel the presumption of fraud, which the character of the conveyance would create. But we cannot look into the whole of this case, because the greater part of it, and matters contained in it which the parties deem material, consist of the evidence of witnesses, and not of facts found by the jury. The supreme court was under no embarrassment from this circumstance, because they adjudicated not upon a special verdict, but upon a case made by the parties, constituting them the judges of questions of fact, as well as questions of law. The court of chancery is equally unembarrassed *in deciding questions that come before the chancellor upon pleadings and proofs; for that court equally performs the office of the jury, in determining questions of fact upon the evidence in the cause. But this court being to adjudicate upon a special verdict, must confine itself to the facts appearing by that special verdict to be found by the jury, and can-

*Margin notes:*

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*Hinde's Lessee* v. *Longworth,* 11 Wheat. 199.

[*424]

not adjudge facts upon the evidence of witnesses, nor intend any matter which is not found by the jury.

This appears to me to be the established course of the court. The rule rests upon the soundest principles, and I hope we shall adhere to it. I cannot usurp the powers of a jury, and form my judgment, in this court of appellate jurisdiction, upon the testimony of witnesses.

I am constrained to declare, that I cannot decide the questions of law raised by the parties for the consideration of the court, upon this special verdict. I conceive it radically and substantially defective ; and its defects are, in my judgment, incurable in this court. The proper course, in such cases, appears to me to be, to reverse the judgment.(a)

(a) After an opinion so full and clear upon a special verdict, which was insufficient to raise the intended questions of law, it will, I am persuaded, not be deemed obtrusive by the profession, if I insert here the abstract of a case lately decided in the exchequer chamber of England, showing what will bring the verdict within, perhaps, the extreme outline of sufficiency:

*Monkhouse, Wright and Fairbairn* v. *Hay and others, assignees of Matthews, a bankrupt,* 8 Price, 256.

The action in the king's bench, (*Hay and others, assignee, &c.,* v. *Fairbairn,* 2 B. & A. 193,) was to recover, as money had and received, the proceeds of the sale of a ship assigned to the defendants below, by the bankrupt before his bankruptcy, for the purpose of being sold, in order to pay a debt due to to them. The action was founded on the statute 21 Jac. 1, ch. 19, sec. 11, which, it will be recollected, makes a very important part of the English bankrupt system ; declaring, that if, at the time any one becomes bankrupt, he shall, by the consent and permission of the true owner and proprietary, have in his possession, order or disposition, any goods or chattels whereof he shall be reputed owner, the commissioners may treat it, in all respects, as the bankrupt's property in possession. In other words, it shall be deemed his property. Vid. 7 Pickering's ed., statutes at large, 287. The defendants below, having sold and converted the ship, pledged by the bankrupt, into cash, the consequence was, they were liable in this action to his assignees, should the latter bring themselves within the statute. This was the only question in relation to which the frame of the verdict was contested. This case was, originally, like the principal one; a verdict subject to the opinion of the court, on a case to be turned into a special verdict. In doing this, on the point of reputed ownership, the jury were made to find, that the act of bankruptcy was in December, 1815 ; and, June 19th, 1816, the plaintiffs below were appointed assignees: that in November, 1815, the bankrupt assigned the ship, registered in his name, but then at sea, in trust to sell her in May (then) next, if the debt was not paid in the mean time. In the deed of assignment, the bankrupt covenanted to insure the ship in trust for the de-

*SPENCER, Senator. A question arises respecting the two acres of land sold by Everitt, which should be first disposed of, before entering into the other parts of the case; because it is unconnected with them. The record of the judgment of the supreme court is not printed; but the counsel on both sides agree in stating, that the declaration contained but one demise; that it was general for 500 acres of land,

Two parcels of land recovered on a single count and single demise.

fendants below; and it was agreed, moreover, "that in the mean time, and until the said ship should be sold under the trusts of the deed, the bankrupt should be permitted peaceably and quietly to have, hold and enjoy the same, and to receive and take the gains and profits thereof, for his own use and benefit, without the lawful let, &c." That the registry was duly changed, so as to stand in the name of Fairbairn, one of the defendants below, before May, 1816, when the commission of bankruptcy issued. That the bankrupt, at the time of the assignment, had possession of the ship then at sea, under the command of a captain appointed by him; and he continued, from that time until the first of June, 1816, to exercise all acts of ownership, by appointing successive captains, employing and chartering the ship on different voyages, and receiving the freight from January to April, 1816; that during that time, he, from time to time, repaired and insured the ship at his own expense, but she was navigated under a certificate of registry granted to Fairbairn on the 31st of January, 1816: that the defendants below had never interfered in any way with the ship, till June 1st, 1816, when they took possession, and afterwards sold her; the clear proceeds amounting to £585.

The avowed object of the writ of error was to bring under review the cases of *Robinson* v. *M'Donnell*, (5 M. & S. 228,) and *Hay* v. *Fairbairn*, (2 B. & A. 193,) on a question as to the effect of the registry acts on the Stat. 21 Jac. 1, c. 19, s. 11; but with that we have nothing to do.

*Parke*, for the plaintiffs in error, in addition to the question upon the merits, raised one of form as to the special verdict. He said, the finding of the jury in that verdict was not sufficient, as to the fact of the reputed ownership, to entitle the defendants in error to recover; and that, therefore, as that was a question for the jury, and they had not determined it, there ought to be a *venire de novo* awarded. The reputed ownership was rather a question of fact than of law, as was said by Eyre, C. J., in *Lingham* v. *Biggs*, to have been " well observed by Mr. Justice Buller, in *Walker* v. *Burnell*, that questions on the 21 Jac. have much more of fact than of law in them." Had the jury found a fact, to which no other fact found were opposed, the court might then decide on the law as applicable; but where, as here, the jury find conflicting evidence of ownership, and do not strike the balance between them, the court cannot do it. The effect of finding that the ship was registered anew in the name of Fairbairn, must be to negative reputed ownership in the bankrupt, or it would be of no effect at all, which would be no finding on that material part of the case. If, as in *Fraser* v. *Marsh*, (2 Campb. 517,) a ship were let for years, the jury would be bound to decide in whom the re-

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

[*427]

Whether judgment, being erroneous for one, though good for the other, must be reversed *in toto.*

without *specifying any particular tract or parcels ; that, on the trial, the plaintiff claimed the farm of two hundred and twenty acres, and also the two acres adjoining, on which there was a house and garden ; and, that upon the return of the special verdict, the supreme court gave judgment generally for the *plaintiff; and it is objected, that a clear title having been shown in the defendant to the two acres, the judgment so far is erroneous, at all events, and that it must be reversed *in toto.* And it is admitted, that the objection to the plaintiff's right of recovery for the two acres, was made and argued in the supreme court.

puted ownership was, at the time of the bankruptcy; and they are equally bound to do so in the present case where it might depend on particular circumstances, as the custom of a port, and many others. Unless, therefore, the case should go back to the jury, to draw some conclusion, he submitted no judgment could be given on this record; and in *Muller* v. *Moss,* (1 M. & S. 335,) Lord Ellenborough distinctly said, that reputed ownership was a fact that ought to have been found,

*Tindal,* contra, insisted that the point upon the form of the verdict was not sustainable; for in all the cases on this subject, the question has been considered to be one mixed both of fact and law; and it has been left to the court to decide whether, under all the facts stated, a reputed ownership was in the bankrupt or not. If the jury had found the reputed ownership to be in him, no question would have been left for the court. It is the conflict in the mind of the jury, which makes it necessary for the court to determine the question, upon the facts found to have been proved in the case; for otherwise, *cadet questio.* Therefore, taking the special verdict as it now stands, there is enough to enable the court to decide that the defendants in error are entitled to recover in the action which they have brought; but if that objection were persisted in, the defendants in error might insist on their judgment.

The court, by DALLAS, C. J., said "sufficient facts are stated on this record, to refer to the court the consideration of the question of law, whether the trader had such apparent ownership as comes within the mischief intended to be remedied by the statute of James? And it appears to us, that the conclusion to be drawn in point of law is, that the bankrupt had such reputed ownership," &c.

Judgment affirmed.

The marginal note on the above point in the case, as given by the reporter, is, "If a special verdict, on a mixed question of fact and law, find facts from which the court can draw clear conclusions, it is no objection to the verdict, that the jury have not themselves drawn such conclusions, and stated them as facts in the case."

This is one of those perplexing questions, which so often arise upon the mere form of the proceedings in ejectment. The ancient rule required the description of the premises in the declaration to be so certain, that the sheriff might know, from his execution, exactly of what to deliver possession. The relaxation of that rule has opened the way to numerous and vexatious applications to correct the errors of the sheriff in delivering possession ; and the settled rule of the supreme court, where a general verdict is given for the plaintiff, is to restrict him to the taking possession of so much only as he gave evidence of his title to on the trial. (1 John. Cas. 101.) In this case the plaintiff gave evidence of title to the two acres, and the supreme court, by their judgment, have decided that title to be valid. Of course, that court cannot order a restitution of the two acres, if possession of them should be given to the plaintiff. And it is presumed, that no writ of error would lie on that refusal to award restitution, so long as the judgment remained in force to warrant the execution. The only remedy, therefore, is by a writ of error on the judgment itself. When we come to look at the record, we find that the plaintiff has recovered an indefinite quantity of land, and the difficulty arises, how, upon that record, this court can distinguish the parcels he ought to have recovered, from those he ought not to recover ? But this difficulty is one of the plaintiff's own making ; for, according to the forms given in Runnington's treatise on ejectment, he might have taken a verdict for his term in certain premises, describing them, and for the defendant as to other premises, also describing them, and entered his judgment accordingly. The omission of the plaintiff to do this, ought not to prejudice the defendant by depriving him of all remedy to correct the alleged error.

If, then, there be error in the recovery of the two acres, is it to be corrected by a reversal of the whole judgment, or *can the judgment be reversed in part and affirmed in part? It seems to be well settled, that where the judgment is entire, it cannot be reversed for part, and affirmed for part. The authorities are collected by Mr. Archbold

---

*Margin notes:*

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

Ancient certainty required in declaration in ejectment.

Rule relaxed.

Consequences

Plaintiff now takes possession according to his proof on trial.

Plaintiff may take his verdict for certain described premises, and for certain other described premises, enter a verdict for the defendant.

[*428]

An entire judgment cannot be reversed in part and affirmed in part.

ALBANY,   in his Treatise on Practice, (1st vol. p. 236,) and the follow-
Dec. 1826.  ing is given by him as an illustration of the principle:
Seward    "Thus, where an action is brought for a croft and a mes-
v.      suage in one count, and upon error it is holden that the
Jackson.   action does not lie of a croft, the judgment must be reversed

Declaration in   both as to the croft and the messuage;" for which he cites
one count for   number of authorities, most of which I have examined,
different pieces
of land. Erro-  and they fully sustain him. It is needless, perhaps, to say
neous recovery   that the case there put, is the very case under consideration.
as to one. The
entire judg-   The plaintiff has declared in one count for different pieces
ment must be   of land; and if he fails as to one piece, his whole judgment
reversed.
Otherwise per-  must be reversed. If there had been several counts in the
haps, if sever-
al counts.   declaration, the consequence might have been different.

Of the tittle to    We are then brought to the inquiry, whether the de-
the two acres.  fendant, from the facts found by the special verdict, has a
valid title to the two acres for which the plaintiff has re-
covered? The counsel for the plaintiff below did not con-
tend on the argument, that the recovery for the two acres
could be sustained. Still, perhaps, it is proper to examine
Where one   the question briefly. Everitt sold the two acres to Phi-
buys land and
gives his bond   lander Seward, on his own credit, and took his bond for the
which another   purchase money; although William Seward subsequently
pays, this does
not raise a re-  paid that bond. In case of Botsford v. Burr, (2 John. Ch.
sulting trust   Rep. 409,) the late late chancellor Kent states the law ap-
for the latter.
plicable to the question whether a resulting trust would
be raised for William Seward under such circumstances, in
these words: "Nor would a subsequent advance of money
to the purchaser, after the purchase is complete and ended,
alter the case. It might be evidence of a new loan, or be
the ground of some new agreement; but it would not at-
tach, by relation, a trust to the original purchase; for the
trust arises out of the circumstance, that the moneys of the
real, not the nominal purchaser, formed, at the time, the
consideration of that purchase, and became converted
into the land." There can be no doubt of the correct-
[*429]   ness of that principle, and it decides this *question; for
the credit was solely to Philander Seward, and his bond was
taken at the time, for the price of the land. The advance
by William was subsequent, and did not enter into the

consideration for the purchase. Upon this ground, there- ALBANY, Dec. 1826.
fore, that the plaintiff has erroneously recovered two acres ——————
of land, I can not escape the conclusion, that the judgment Seward
must be reversed.                                           v.
                                                           Jackson.

Here, perhaps, I ought to stop; but, from the organiza-
tion of this court, if a majority of the members should not
be of the same opinion as to the two acres, I shall be called
on to give my vote on the remaining questions in the
case, and I therefore proceed to consider them as briefly as
possible.

· I am of opinion that Van Wyck, the lessor of the plain- Van Wyck
tiff, was a creditor at the time of the conveyance by Wil- was a creditor.
liam Seward to his son; and I am satisfied with the rea-
soning of Justice Sutherland on that point.

The next, and most important question is, whether that Whether the
conveyance was voluntary, or whether it was made for a conveyance to the defendant
valuable consideration, on a purchase by Philander Sew- below was vol-
ard? This question ought to have been determined by untary.
the jury; but they have not passed upon it. They have
found for the defendant on the question of actual fraud,
and no other; and every other question is left by them to
be decided by the supreme court. This court has much
reason to complain of this mode of proceeding, by which
the members are compelled to assume the functions of a
jury, and decide questions of fact upon the testimony.
The practice which prevails in the supreme court, of having
cases which present questions of law and of fact, is not ap-
plicable to a court constituted like this. A special verdict A special ver-
should find all the facts; a bill of exceptions should admit dict should find all the
them, and both should present only questions of law; and facts; and a
no considerations, other than that much time has been spent bill of excep-tions should
in the argument of this cause, and that expense and litiga- admit them.
tion may be saved by deciding it on the merits presented,
induce me to consent to an investigation of the facts. And
if I had not come to a conclusion satisfactory to my own Reversal and
mind, I should deem it a duty to propose a reversal of the venire de novo suggested as a
judgment, and a venire de novo, to have a new *trial, in [*430]
which the facts might be ascertained. That course is remedy for a
defective spe-
rendered the less necessary in the action of ejectment, be- cial verdict.

ALBANY.   cause either party may bring a new suit at his pleasure,
Dec. 1826.
          notwithstanding any former judgment.

Seward            A voluntary conveyance is defined to be a deed without
v.
Jackson.  any valuable consideration.[1]   In this the books all agree;

A voluntary  and I do not understand the counsel in this case to differ
conveyance is  respecting it.   The adequacy of the consideration does not
a deed without
any valuable  enter into the question, and only becomes material to ascer-
consideration.  tain a fraudulent intent.   But the character of purchase or
          voluntary is determined by the fact, whether any thing
A bond for  valuable passed between the parties.   The execution of a
the purchase
money made  bond to pay the purchase money, made in good faith, and
in good faith
and intended  intended to be paid, is a valuable consideration, and makes
to be paid, is a  the transaction a purchase, as much as the actual payment
valuable con-
sideration.  of money.   If it does not, then one half of the titles to
          lands in this state are invalid; and it is too late to inquire
          whether a security for money accepted by the the grantor,
          is not equivalent to money.   If, then, William Seward had
          taken from Philander Seward his bond for the payment
          of the purchase money, with a fair and *bona fide* intent, on
          the part of both, that it should be paid, and it was not
          merely colorable to conceal a fraudulent transaction, if Phi-
          lander had entered into the possession of the premises, and
So a bond  the whole had been open, public and avowed, surely no
for an annuity
equivalent to  one could doubt that it was a purchase.   If, instead of
the purchase  taking a bond for the payment of a gross sum of money, .
money.

[1] A voluntary conveyance is good between the parties, and only void as
to creditors who are thereby delayed, hindered or defrauded.   *Chamberlyne*
v. *Temple*, 2 Randolph, 384.

They may be avoided by creditors holding pre-existing debts, but are good
against debts accruing subsequent to the date of the deed, unless there be
some extraneous evidence of fraud in them.   *Crosby* v. *Ross' adm'rs.*, 3 J. J.
Marsh, 290.

A voluntary conveyance, or a conveyance in fraud of the law, is not a
nullity, but binds parties and privies.   *Randall* v. *Phillips*, 3 Mason, 378.

A voluntary settlement, by a person not in debt, cannot be impeached by
a subsequent creditor, unless made with a view to future indebtedness, or at-
tended with some other circumstances of fraud.   But it is void, if made by
a person indebted, as to subsequent creditors.   *Iley* v. *Niswanger*, 1 McCord's
Ch. Re.p 521.

But the debt must be sufficient to raise a reasonable presumption of fraudu-
lent intent, and beyond one's current expenses.   Ib.   Am. Ch. Dig., vol. 2,
pp. 29, 30, Nos. 294, 295, 306, 307, 308

he had taken one to pay such an annuity as the parties, upon a fair calculation of all contingencies, deemed equivalent to the price agreed to be paid, surely the transactions must be viewed in the same light as if the money were paid, or a bond for its payment had been taken. And if securities for the payment of the purchase money to himself had been taken, and he had assigned those securities to a third person, no one would have pretended that it was not a purchase for a valuable consideration; and whether the securities are taken, directly to such third person, or indirectly, through the medium of an assignment, cannot vary the case. In this plain and common sense view of the case, the taking of the bonds by William Seward, for the payment of part of the purchase *money to his daughters, must be considered the same as if taken to himself, and by him given to his daughters; and therefore the transaction was upon a valuable consideration, and a purchase to all intents and purposes.

The gift of the money, or the securities, to his daughters, was unquestionably voluntary; and, as between them and creditors, might be impeached, and they might be required to deliver them up.[1] And here, it appears to me, is the root of the fallacy which has led to the calling of the sale to Philander Seward a voluntary settlement. That sale is confounded with the disposition made by the vendor, of the proceeds of the sale. But with them Philander Seward had nothing to do. Admit that it was the intention of the

*margin notes:*

ALBANY, Dec. 1826.

Seward v. Jackson.

Therefore the purchase in [*431] this case was on a valuable consideration.

Though the gift of the bonds to the daughters was voluntary, and might be impeached by creditors.

[1] When a voluntary settlement in favor of children, will be set aside as fraudulent, as against an existing creditor. *Cato* v. *Early*, 2 Stewart, 214. A voluntary deed, by a father, of his personal property to his children by a former marriage, held to be good. *Lightfoot* v. *Colgin*, 5 Munf. 42. Of several voluntary deeds, the first must prevail. *Maine* v. *Dickenson*, 2 Desau. 191.

See Waterman's Am. Ch. Dig., vol. 2, tit. *Deeds.*

A conveyance, without any valuable consideration, and purely voluntary, in secret trust for the use of the grantor's wife and children, is fraudulent in law, and void as to creditors who were such, before, and at the execution of such conveyance. It is not necessary that a creditor, in order to set aside such conveyance, should show the grantor to have been insolvent at the time of its execution. It is sufficient that he is considerably indebted to the creditor, and that no other property appears sufficient to satisfy such debt, other than that contained in the conveyance. *Jones* v. *Sluby*, 5 Har. & Johns. 372; Am. Ch. Dig, vol. 2, p. 27, No. 275.

father to make provision for his daughters, and suppose, in order to effect it, he had received money for his land, lent it out, and taken securities payable to his daughters, the sale would not be affected by such an application of the securities. It would still be a purchase by the vendee; and if, instead of the purchaser paying the money, he should himself borrow it and execute securities to the daughters, what possible difference could it make as to his character of purchaser? And it must be the same thing, whether he executed his bond for the consideration of the sale at once, or whether he went through the useless ceremony of paying his money and receiving it back again. The case of *Jackson* v. *Austin*, (15 John. Rep. 477,) if any decision were necessary for so plain a proposition, decides an analogous principle, that where a mortgage was given for the purchase money of land to a third person, who had advanced the money to the vendor, such mortgage was entitled to the preference given by statute to mortgages for the purchase money. Admitting, therefore, that the greater part of the price of the land was intended to be appropriated by William Seward as an advancement to his daughters, as stated by Justice Sutherland in his opinion, yet that intent cannot determine whether the conveyance to Philander Seward was a voluntary settlement or a purchase; because that advancement was subsequent to the sale, and could not and did not form any part of the consideration of the conveyance to Philander Seward. He might have sold to a *stranger with the same intent, taken the money, and invested it in stocks or private securities, and assigned those to his daughters as an advancement to them. This could not relate back, and make that sale a voluntary settlement on his daughters.

[*432]

But if the intent is to be regarded, in order to determine whether this was a fraudulent deed, there is an end of the controversy; for the jury have found against such intent.

I cannot bring my mind to any other conclusion, than that this was a technical purchase and not a voluntary gift, and that there was a valuable consideration in the bonds given to the daughters. I do not inquire whether this was or was not fraudulent in fact, because that is not the ques-

*If the intent is to be regarded, the jury have found against it.*

*Purchase vand.*

tion when we are determining upon the character of this deed. The deed itself was in consummation of a sale and purchase; and if the proceeds were voluntarily bestowed on his daughters, let them be called on to account for them to the creditors.

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

It appears to me that the bond to pay William Seward five hundred dollars during his life, is also a valuable consideration, as much as if it had been to pay him a sum of money which would purchase or produce such an annuity. And if it had been for a gross sum, no one would question the transaction being a purchase. But justice Sutherland says, "the annuity cannot enure by way of pecuniary consideration to the support of the deed, because, he says, "the annuity was in the nature of rent for the use of the farm, and cannot be considered the consideration for the conveyance." It certainly was not the whole consideration; but it clearly was a part of the consideration on which the conveyance was made. This is apparent on the face of the transaction; it is sworn to by James Emott, and the deed itself is assailed by the lessor of the plaintiff on that express ground. Still, if the annuity is to be regarded as rent for the use of the farm, then, according to the best authorities, that is sufficient. In the Sutton Hospital case, in 10 Coke, 34, it was held that the reservation of rent in a bargain and sale, was a sufficient consideration. This is stated by Comyn, (Dig. Bargain and Sale, B. 11,) as the settled *law; and he refers to 2 Roll. 788, and 1 Modern, 263, which fully sustain him.

*Though daughters liable to account to creditors.*

*The bond for the life annuity was a valuable consideration.*

*Rent is a valuable consideration to sustain a purchase.*

[*433]

But I do not wish to put my opinion on this ground; for I cannot entertain a doubt that the bond to pay $500 annually during the life of Wm. Seward, was in fact, and without any legal inference, a part of the consideration for the purchase.

*Bond for annuity was a part of the consideration for the purchase.*

And so the counsel for the plaintiff consider it, and, upon that fact, found an objection of another kind, which is that admitting the sale to be for a valuable consideration, it is void on account of the annuity being reserved to the grantor; and the case of Mackie and Milne v. Sedgwick and Lord, decided in this court, (5 Cowen, 547,) is relied upon to es-

*Mackie v. Cairnes, (5 Cowen, 547,) that a reservation to a grantor is fraudulent, and void in part, void in whole does not apply.*

ALBANY,
Dec. 1826.
———
Seward
v.
Jackson.

tablish, 1st, that a reservation to the grantor is fraudulent against creditors, and 2d, that being fraudulent and void in part, the whole is void.[1]    I do not see any occasion to review that decision in the present case, because in my view it is not applicable.    There is no reservation here, any more than there would have been if the grantor had taken a bond to himself for the purchase money.    Instead of doing

The annuity bond is no reservation, any more than a bond for the purchase money would have been.

so, he sold his land for a security that would yield him $500 a year during life, which, according to the tables of annuity, was worth, to a man 71 years old, the purchase or principal of about $2600 ; and it amounts to the same thing as taking a bond for that principal.    If this be a reservation, then is every sale of land on a credit for the whole or a part of the purchase money, equally a reservation ; and upon the authority cited, in itself fraudulent and void.    This court, I apprehend, will pause long, and require the most conclusive authority before it comes to such a result.

Conveyance to defendant therefore not voluntary.

I think, therefore, that this was not a voluntary conveyance, but that there was some valuable consideration whether sufficient or not, whether the whole was not a continuance to avoid the payment of Van Wyck's demand, are other and distinct questions depending upon a variety of

Where there is any valuable consideration, the question of fraud is for the jury.

facts and circumstances, and which, it is conceded on all hands, must be decided by a jury.    And it is further conceded, that if it be voluntary, if there were any valuable consideration, then the jury also must pass on the question

[*434]

of fraud.    *The jury have determined that question by their verdict for the defendant : and if there was a valuable

Verdict in this case conclusive for defendant below.

consideration, that verdict is conclusive, and judgment should have been rendered pursuant to it.

If the view already taken be correct, the case is disposed of without going into the inquiry, whether, even under a voluntary conveyance, the question of fraud is not one of fact, to be determined by the jury ?    I shall not pretend to examine the authorities produced, or the reasoning offered by the counsel on the different sides, but be content with stating my judgment in the language of the unanimous

[1] See Waterman's Am. Ch. Dig., vol. 1, tit. *Debtor and Creditor.*

opinion of the supreme court of the United States, as delivered by justice Thompson at the last term of that court, in the case of *Hinde's lessee* v. *Longworth*, reported in 11th Wheaton, 213, and which I repeat, because according to my notes, it was not cited on the argument: "A deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors. It may be so under certain circumstances; but the mere fact of being in debt to a small amount would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances, and unembarassed, and that the gift to the child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. The want of a valuable consideration may be a badge of fraud; but it is only presumptive and not conclusive evidence of it, and may be met and rebutted by evidence on the other side." The plain sound sense of this decision, and its accordance with the natural dictates of justice, will commend it to the consideration of this court, no less than the exalted character of the high tribunal which pronounced it. After all the contradictions of the cases in England, and in this country, in which we find the sages of the law arrayed against each other, it is consolatory to discover a spot of ground, reared by the talents and learning of the highest American court, on which we may safely and firmly rest. It is a decision which meets directly the position of the plaintiff below, and overthrows it; for, if " the want of a valuable consideration is only a badge of fraud, presumptive, *and not conclusive evidence of it," then the jury must pass upon it, and having found for the defendant in this case on that question, there ought to be judgment accordingly.

Indeed, it will be a fortunate circumstance, if the decision of this court should not only finally settle in this state, this long agitated question, but should also restore the vital principle upon which trial by jury depends.

In the present case, even upon the ground taken by the counsel for the plaintiff below, the judge who tried the cause should have been called on to decide, whether, if the

*Margin notes:*

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*Hinde's lessee* v. *Longworth*, 11 Wheat. 213.

Conveyance from a parent to a child in consideration of love and affection, is not absolutely void as to creditors; but is open to an inquiry into the circumstances.

What circumstances will rebut the presumption of fraud.

[*435]
The jury must pass upon it; and having found for defendant, there must be judgment accordingly.

The judge should have decided, at the circuit,

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

whether, if the
jury found the
deed volunta-
ry, it was not
conclusively
fraudulent.

How cases
which speak
of fraud in law
and fraud in
fact may be
reconciled.

Summary of
conclusions on
different points
in the case.

[*436]

Judgment be-
low should be
reversed.

jury found this a voluntary conveyance, it was not in law conclusively fraudulent? If he had so decided, it would have been still submitted to the jury, and if they had found in accordance with the charge, the defendant might have excepted and brought up the question on a motion for a new trial. If they had found against the charge, the plaintiff never could have moved for judgment against the verdict, but might have asked for a new trial. The plaintiff did not require the decision of the judge, in order that it might be submitted to the jury, (which, in my judgment, was the only occasion where a decision on the legal construction of the instrument could have been had,) but the whole question of fraud was left to the jury, who have found for the defendant below; for the language of the verdict will bear no other construction; and I cannot conceive how a judgment can be rendered on the alleged ground of fraud, until that verdict is removed and another obtained.

This view will reconcile the language of many cases, which speak of fraud in law and fraud in fact. Strictly speaking, there is no such thing as fraud in law; fraud or no fraud is, and ever must be a fact; the evidence of it may be so strong as to be conclusive; but still it is evidence, and as such must be submitted to a jury. No court can draw it against the finding of a jury.

I am of opinion, therefore, that the judgment of the supreme court is erroneous as respects the two acres of land; that being entire and on one count, it cannot be affirmed in part, and therefore must be reversed wholly. I am further *of opinion, that the conveyance of Wm. Seward to Philander Seward, was made for some valuable consideration, and was not voluntary; and that, therefore, it was a question of fact for the jury to say whether it was with a fraudulent intent. And I am still further of opinion, that it was voluntary, it was not conclusive evidence of fraud, and was still to be submitted to the jury; and that the jury having found for the defendant, it was erroneous to render judgment against him.

I am therefore of opinion, that the judgment of the supreme court should be reversed.

STEBBINS, Senator, (after stating the facts.) It is contended that the conveyance of Wm. Seward to his son Philander being partly voluntary, is wholly void as against Van Wyck, although the jury, by the special verdict, find that there is no actual fraud, and acquit the parties of any fraudulent intent.

ALBANY,
Dec. 1826.
Seward
v.
Jackson.

The case of *Reade* and *Livingston*, (3John. Ch. Rep. 492,) a leading one in our courts upon this subject, and relied upon by the supreme court in their opinion in this cause, has been assailed by the counsel for the plaintiff in error; but leaving the doctrine of that case untouched, in my opinion the judgment of the supreme court in this cause, ought to be reversed. The doctrine of that case is, that "a voluntary settlement made by a person indebted at the time, is presumed to be fraudulent in respect to such debts, and no circumstances will repel the presumption of fraud; but that as to subsequent debts, there is no such necessary legal presumption; and there must be proof of fraud in fact; and the indebtedness at the time, though not amounting to insolvency, must be such as to warrant that conclusion." (id. 501, 502.)

*Reade* v. *Livingston,* 3 John. Ch. Rep. 492.

That this distinction does not exist is settled by this and many other cases; (12 John. Rep. 536; 4 Cowen 603;) and there would seem to be some reason for presuming, that a voluntary conveyance was made to defraud existing creditors; but I can see none for presuming that such a conveyance was intended to defraud persons afterwards to become creditors.

*I think Van Wyck was not a creditor at the time of the conveyance by William Seward. He, at that time, held an unbroken covenant, carrying no evidence of indebtedness on its face, and which might or might not give him a right of action thereafter, depending upon the contingency of his collecting the judgment out of the property of William Seward, jun. He would not have been considered a creditor under the English bankrupt laws or our insolvent laws, (3 Term. Rep. 435; 8 id. 386; 1 John. Cas. 73; 9 John. Rep. 127;) and I see no reason why the rule should be different under the statute of frauds. If he was a creditor

[*437]

Van Wyck was not a creditor at the time of the deed.

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

in this case, he would have been equally so, had he held an unbroken covenant of warranty of lands; and the consequence would be, that no person could make a settlement upon his children with safety, so long as an outstanding covenant of warranty remained against him. That the statute of frauds protects "others" than creditors, is granted; but there must be actual fraud. The legal presumption of fraud arising from indebtedness, does not seem to be interposed by the courts in favor of any but creditors, at the time of the conveyance. Van Wyck, as a subsequent creditor, is undoubtedly entitled to the protection of the statute; but he must show actual fraud. *Jackson* v. *Myers,* (18 John. 425,) was a case of apparent actual fraud; and the court say that the facts leave no doubt on their mind, that the conveyance was made "for the purpose of placing the property beyond the reach of any judgment or execution which Morse might obtain in the action then pending."

He was a subsequent creditor; but, as such, must show actual fraud.

In *Wilcox* v. *Fitch,* (20 John. 472,) also the plaintiff had an action pending.

In the case under consideration, there was not only no action pending at the time of the conveyance, but no right of action existed in Van Wyck; and his covenant was not such as to afford any evidence of indebtedness.

The claim for the two acre lot, being abandoned by the counsel, and considering Van Wyck as becoming a creditor of William Seward, subsequent to the conveyance by him to his son Philander, which conveyance is found by the verdict to be untainted with actual fraud, in my opinion, Van *Wyck is not entitled to recover the premises in question, and the judgment of the supreme court ought to be reversed.

[*438]

ALLEN, Senator. It was admitted on the trial of this cause by the counsel for the plaintiff below, that actual fraud had not been shown in the conveyance from William to Philander Seward; and that the defendant below was entitled to a verdict in his favor upon that point, and that he should be considered as having obtained such ver-

What is admitted and found by the verdict.

dict, reserving to the plaintiff below the question, whether the conveyance was fraudulent in law. Indeed, the jury say expressly in the special verdict, that actual fraud has not been shown; and find in favor of the defendant below upon that question.

But the plaintiff below contends, that upon the whole matter, he is entitled to judgment, because the conveyance was fraudulent in law, and void under the 2d section of the act of the 26th of February, 1787, (sess. 10, ch. 4,) which is the same as the statute 13th Eliz. c. 5; and the supreme court, upon that principle, gave judgment for him.

*What the plaintiff below contends for; and how the court below decided.*

Two questions have, therefore, been presented for the consideration of this court: 1. Was Van Wyck a creditor within the statute; and 2, if so, was the conveyance fraudulent as against him?

*The questions.*

In the view I have taken of the subject, it has been necessary to examine only the second question. Mr. Justice Sutherland, in giving the opinion of the supreme court, held that the conveyance was voluntary, and therefore not valid against a prior creditor; and this opinion is grounded upon the decision of chancellor Kent in Reade v. Livingston, (3 John. Ch. Rep. 481.) Opinions coming from such a source, press upon the mind with great weight, and are entitled to the highest respect and consideration. But being in a court where the law is finally to be settled, and considering the importance of the principle, I have examined the authorities cited in that case, and some others, and have come to the conclusion, that the legal presumption there laid down as the doctrine of the courts, is not warranted by a just interpretation of the statute; and that the English decisions previous to the 19th of April, 1775, do not so conclusively *and satisfactorily settle the principle, that it ought to be held binding upon this court as common law authority. The chancellor held, in that case, that the intent with which a voluntary conveyance is made, is not material as regards prior creditors, but that it is fraudulent and void per se. His language is, " if the party be indebted at the time of a voluntary settlement, it is presumed to be fraudulent in respect to such debts; and no circumstances

*Necessary to examine the second question only; viz. whether the conveyance was fraudulent in law.

Reade v. Livingston, 3 John. Ch. Rep. 481.*

[*439]

will permit those debts to be affected by the settlement, or repel the legal presumption of fraud; that the presumption of law does not depend upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party;" and in making a distinction between prior and subsequent debts, he observes, that "the fraud in the voluntary settlement, is an inference of law, and ought to be so as far as concerned existing debts; but as to subsequent debts, there is no such necessary legal presumption; and there must be proof of fraud in fact:" thus making a distinction between fraud in law and fraud in fact as arising upon the statute.

But what are we to understand by the expressions, "legal presumptions of fraud," "fraud is an inference of law," &c., &c., when we are looking for the construction of a statute made for the prevention of frauds? Fraud, by the common law, is a deceit in the conveyance of lands or chattels, to the injury of another person; and involves the intent of the wrong doer. A., intending to defraud B., sells him a horse, and affirms him to be sound, when he knows the contrary. Here are two propositions; and when they are connected, the fraud follows as a conclusion of law from both. How then does the law presume or infer fraud? Directly it does not. But it may presume and infer facts; and if the facts it infers are necessary to make the fraud, then the fraud follows as a like conclusion. It is the judgment of law, on facts and intents. If there be a loan of money, and more than seven per cent. taken for interest, the law will presume an intent to evade the statute; for without that fact, there would be no usury. The statute 13 Eliz. avoids conveyances made with intent and purpose to defraud. [*440] *Now, it must either be proved directly that such was the intent and purpose of the conveyance, or the fact must be presumed. If presumed, how does the law prevent that presumption from being repelled? Repelling the presumption, is only disproving the fact which has been presumed.

If the legal presumption is to be held conclusive, I confess I do not see how fraud, as contemplated by the stat-

ute, is involved in the question; for, on that principle, every prior debt is a *lien* on the debtor's estate, against all conveyances, however meritorious or honest, if made without a valuable consideration; and is as perfect in effect, as if the prior creditor had a mortgage or judgment on the property conveyed. But it is conceded by the same authority, that subsequent creditors would be required to go so far as would be sufficient to raise reasonable evidence of a fraudulent intent; so that as to prior creditors, the conveyance would be conclusive and fraudulent *per se*, and the presumption could not be repelled by any circumstances. But as to subsequent creditors, it would be only *prima facie* evidence, and the intent and purposes of the grantor might be inquired into. That most of the authorities before Lord Hardwicke, make no such distinction, I think cannot be doubted. · They go upon the ground that the voluntary conveyance is of itself presumptive, but not conclusive evidence of a fraudulent intent. And how could they go beyond this? The voluntary conveyance is not proof positive of such intent; because it may have been made honestly; and when the conveyance and the fact of prior indebtedness come out in proof together, it is then a reasonable presumption it was made to defraud creditors.

If we take the statute and examine its plain and simple language, unembarrassed by conflicting constructions, it is difficult to perceive the ground of such a distinction.

The 2d section of the act, (1 N. R. L. 75,) recites, that for the avoiding and abolishing of all feigned, covinous and fraudulent feoffments, gifts, grants, alienations, conveyances, &c., &c., which have been, and are devised and contrived of malice, fraud, covin, collusion or guile to the end, purpose and intent to delay, hinder or defraud creditors and others of *their just and lawful actions, suits, debts, &c., &c., and then enacts that all conveyances made for any intent or purpose before declared and expressed, shall be void. What language can be stronger, to show that the intent and purpose of the grantor are material in all cases under the act? It speaks only of those conveyances which are devised and contrived of malice, fraud, covin, collusion,

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

1 R. L. 75.
Though a man being indebted make a voluntary conveyance, this is not conclusive, though presumptive evidence of fraud as to creditors.
[*441]

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

And the pre-
sumption is
less strong in
respect to cre-
ditors on debts
contracted af-
ter the con-
veyance.

&c., &c., to the end, purpose and intent to defraud credi-
tors; using every common law term, that could well be
found to express the corrupt purpose and intent of the
wrong doer. And the 4th section, which makes the con-
veyance penal, and subjects the parties to a forfeiture,
shows the sense of the legislature, and Lord Mansfield, in
*Doe* v. *Routledge*, (Cowper, 710,) cites this part of the stat-
ute, to show that a voluntary settlement, as such, was not
covinous and fraudulent.

It must therefore be obvious, if we look at the statute
only, that the intent and purpose of the parties are no
more the subject of inquiry when the conveyance is made
to defraud creditors whose debts are contracted subsequent
to it, than they are when made to defraud prior creditors.
It may not be so common an occurrence for a man to dis-
pose of his property for the purpose of contracting future
debts he never means to pay, as it is to dispose of it to
avoid debts already made. But that men might do so to
avoid the payment of future debts, was foreseen by the
legislature; and that they have done it, cannot be disputed.
It is admitted, that in that case the intent and purpose may
be inquired into. If so, why not in the other? It does
appear to me, that the only real difference is in the weight
of evidence or proof. If a man puts away his property
while he is in debt, it is strong evidence of an intent to de-
fraud his creditors. If he does it when not in debt, but
with a view to making future debts he never means to pay,
it is evidence of a fraudulent intent, but comparatively
weak; and in either case, the evidence is made stronger or
weaker according to circumstances. These are as various
as the different situations, actions and devices of men. They
depend on the solvency or insolvency of the debtor, the
amount of property conveyed, the amount of the debts, the
time and manner of conveyance *and the person or per-
sons to whom the conveyance is made; and they are to be
considered and determined by courts of equity and juries.
But on the contrary principle, there is no inquiry into any
circumstances. A debt of five dollars is as conclusive evi-
dence of fraud as five thousand.

[*442]

It was said on the argument, that the doctrine of legal fraud had its origin at that period, when the courts were inclined to take the power from the jury. But another suggestion, that it is the offspring of the court of chancery, I believe the true one. There the chancellor determines both the law and the fact; and the purpose and intent of the conveyance are before him, as before a jury in the courts of law. When a conveyance had once been adjudged fraudulent upon a given state of facts, those facts, as well as the law, became a precedent for a succeeding chancellor; and bound the judgment by the force of analogy, upon the question of intent and purpose, as well as law. And when an analogous state of facts in the courts of law, has been referred to a jury, and the jury has said there was no fraud, the sayings of equity judges have been resorted to for legal presumptions, independent of intentional fraud; and hence the modern distinction between fraud in law, and fraud in fact.

It becomes, then, an important question, whether, when a voluntary conveyance, made upon the consideration of blood and affection, is impeached on the ground of its being fraudulent as against creditors, and, on a trial at law the jury has declared in a special verdict that the conveyance was not made with the intent and purpose expressed in the statute, the court can, notwithstanding the verdict, pronounce upon the record, that the conveyance is fraudulent and void?

Is the conveyance only *prima facie evidence* of fraud; or is it conclusive, and not to be repelled?

*Twyne's Case*, (3 Co. 80,) is a leading one on the subject of fraudulent conveyances, and arose a few years after the statute. Several points were resolved by the court, and all of them clearly adopted as evidence of the fraudulent intent. It was said the gift had the signs and marks of fraud, because it was general, without exception of his apparel, or *anything of necessity; that the donor continued in possession of the chattels, and used them as his own; and that it was made in secret and pending the writ; and that there was a trust between the parties, &c., &c. All

[*443]

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

Sagitary v.
Hide, 2 Vern.
44.

Ralph Bovy's
case, 1 Ventr.
193.

The 27 El.
always con-
strued more
strongly in fa-
vor of pur-
chasers than
the 13 El. in
favor of credi-
tors. Walker
v. Burrows, 1
Atk. 93. Ld.
Townsend v.
Windham, 2
Ves. Sen. 1,
10. Ld. Teyn-
ham v. Mul-
lins, 1 Mod.
119, Leach's
ed.

Lavender v.
Blackstone, 2
Lev. 146.
[*444]

these were the circumstances drawn from the case, and the evidence by which the court determined the transaction to be fraudulent.

Sagitary v. Hide, (2 Vern. 44,) was a case in chancery. The plaintiff was a creditor by bond to J. S., who settled his real estate on his wife for life, remainder to one Middleton, with power of revocation; and Middleton sold to the defendant, Hide, who had part of the purchase money in his hands, out of which the plaintiff sought to be satisfied his debt. For the plaintiff, it was insisted that the settlement was fraudulent, and that the estate ought to be assets. But it was said by the court, that every voluntary conveyance is not, therefore, fraudulent; but a voluntary conveyance, if there was a reasonable cause for the making of it, may be good and valid, even against a creditor.

And in Sir Ralph Bovy's case, (1 Vent. 193,) it was said by the court, if there had been no precedent agreement to make the settlement, so that it had been a voluntary conveyance, though every such an one carries an evidence of fraud, yet it is not, upon that account only, always to be reckoned fraudulent, or to be avoided by a purchaser upon a valuable consideration. It is to be observed, that this was a case of a subsequent purchaser, under the 27 El. c. 4, and the courts have construed this statute more strongly in favor of purchasers, than that of 13 El. in favor of creditors. (Walker v. Burrows, 1 Atk. 93; Lord Townsend v. Windham, 2 Ves. Sen. 1, 10.) And the same distinction is laid down in Lord Teynham v. Mullins, (1 Mod. 119.) Hale, Ch. J., and Twisden, J., there said the settlement was not fraudulent, and that a deed might be voluntary, and yet not fraudulent; otherwise most of the settlements in England would be avoided. That was a case under the 13 Eliz. (1 Mod. 119, Leach's ed. note a.)

In Lavender v. Blackstone, (2 Lev. 146,) one ground the court took as an evidence of fraud, was the continuance in *possession by Pudsy, who had made the settlement; and Hale, Ch. J., said every such conveyance, prima facie, shall be deemed fraudulent against a purchaser.

But circumstances may alter the case; and in the East

*India Company* v. *Clavell*, (Gilb. Eq. Rep. 37,) it is obvious, that the lord chancellor grounds his opinion upon the purpose and character of the settlement; for he observed, "it was a reasonable, just and honest provision, and no color of fraud in it." (Id. 39.)

It is admitted by Lord Ellenborough, in *Doe* v. *Manning,* (9 East, 63, 64,) in discussing the same subject in relation to subsequent purchasers, that in several of the cases which arose nearest to the time of passing the statute, the judges seem to have thought that a voluntary settlement was only *prima facie* fraudulent against a purchaser, according to the language of *Sir Ralph Bovy's case;* and he cites, to the same effect, *Jenkins* v. *Kemishe,* (Hardres, 398, and 1 Lev. 146;) *Garth* v. *Mois,* (1 Keb. 486;) and in Style, 446, he says, "It is stated to have been said, on a trial at bar, (Lord Rolle being then chief justice,) that a voluntary conveyance upon consideration of natural affection, hath no badge of fraud, unless he who makes it be indebted at the time, or in treaty for the sale of the lands. And in addition to these printed cases, Sir Robert Eyre, then chief justice of C. B., according to a manuscript note formerly belonging to Mr. Justice Cline, in a case of *Standon* v. *Charlwood,* tried before him at the London sittings, after Trinity term, 1732, laid it down that a voluntary settlement, made upon marriage, by Sir Richard Anderson, was not fraudulent because voluntary; but the question was, whether it was not made with an intent to defraud; and the jury so found it." He then introduces several ancient cases, which he supposes establish a contrary principle. The earliest case, he says, in which this is distinctly laid down, is *Woodie's case,* cited by Tanfield in *Colville* v. *Parker,* (Cro. Jac. 158,) where it was adjudged, "that, an assignment of a lease of lands by one *quasi* in jointure to his wife, he taking the profits, and afterwards selling it without notice, was within the statute; though not made in trust to be revoked, nor with any clause of revocation; because it *was a voluntary conveyance at first, and shall be intended fraudulent at the beginning." It will be recollected, that this was the language of Tanfield, upon evidence to the jury, on an information,

*Margin notes:*

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*East India Co.* v. *Clavell,* Gibb. Eq. Rep. 37.

*Doe* v. *Manning,* 9 East, 59, 63, 4, and the cases there cited.

[*445]

in which it cannot be supposed that a fraud in law would be conclusive upon the defendant. It does not appear to me, from this note, that the distinction was so clearly taken in *Woodie's case* as was supposed. The expression, that it shall " be intended fraudulent at the beginning," is satisfied with the idea, that it shall be presumed to be so, until the contrary appears. Nor do I perceive, on a careful examination of the other cases, that the contrary principle is so clearly established. They are *Prodgers* v. *Langham*, (1 Sid. 133;) *White* v. *Hussey*, (Precedents in Chan. 14;) *Gardiner* v. *Painter*, (Cas. temp. King. C., p. 65;) and *Tonkins* v. *Ennis*, (1 Eq. Cases Abr. 334.)

Of the cases
decided by Ld.
Hardwicke.
In examining the cases decided by Lord Hardwicke, it is manifest that he often regards the conveyance and the circumstances as evidence of fraud; and when it is considered he was determining facts as well as law, it is sometimes difficult to understand, whether he takes the facts and circumstances as evidence of the fraudulent intent, and thus adjudges the conveyance void; or considers that the law makes it void without regard to circumstances. I will notice them in the order of time in which they arose.

In *Russell* v. *Hammond*, (1 Atk. 15,) which was the case of a prior creditor, he said, " the question is, whether this shall prevail against the creditors of German and Hammond, as a good settlement. It depends upon circumstances; and every case varies in that respect. There are many opinions that every voluntary settlement is not fraudulent. What the judges mean is, that a settlement being voluntary, is not, for that reason, fraudulent; but is evidence of fraud only. (*Bovy's Case*, 1 Vent. 193. Lord *Teynham* v. *Mullins*, 1 Mod. 119.) Though I have hardly known a case where the person conveying was indebted at the time of the conveyance, that has not been deemed fraudulent. There are, to be sure, cases of voluntary settlements that are not fraudulent; and those are, where the person making it is not indebted *at the time. Subsequent debts will not shake such settlement." But, he said, in the last settlement there was a plain badge of fraud; and he goes on to state what the badge of fraud was.

[*446]

Were there no other decisions of Lord Hardwicke, I should have doubt whether, in this case, he intended to go beyond the doctrine of the cases cited by him. After noticing the opinion of former judges, that the voluntary settlement was evidence of fraud only, he says, he had hardly known a case, where the person conveying was indebted at the time, that not been deemed fraudulent. I should understand him to mean, that indebtedness at the time of the conveyance, was so strong an evidence of fraud in itself, that it had been sufficient, in almost all the cases, to defeat the conveyance; and it seems plain, that in determining the last settlement in the case to be fraudulent, he did so upon the evidence and badges of fraud.

*Stileman* v. *Ashdown*, (2 Atk. 477,) *Middlecomb* v. *Marlow*, (2 Atk. 519,) *Fitzer* v. *Fitzer*, (2 Atk. 511,) and *Walker* v *Burrows*, (1 Atk. 93,) were cases of subsequent creditors; and Lord Hardwicke determined from the circumstances, whether the conveyances were fraudulent or not. They are not material to the point in discussion, except so far as in his observations he makes a distinction between prior and subsequent creditors. In *Fitzer* v. *Fitzer*, in answer to a question put by himself to the counsel, he says, it is certain that every conveyance of the husband that is voluntary, and for his own benefit, is fraudulent against creditors. If it is to be inferred, from this general remark, that prior indebtedness was, in his mind, a conclusive presumption, the same inference may be applied to subsequent indebtedness; for he speaks, without distinction, of every conveyance purely voluntary. And in *Walker* v. *Burrows*, after reciting the language of the act, he says, unless the conveyance was made for the purpose expressed in the statute, it would not be void; for there was no proof that the father was indebted at the time, or soon after, so as to collect from thence the intention to be fraudulent.

*In *Brown* v. *Jones*, (1 Atk. 188,) and *Wheeler* v. *Caryl*, (Ambl. 121,) his attention was drawn principally to the question, whether the consideration was sufficient to support the settlement; and in *White* v. *Sansom*, (3 Atk. 410;) whether the debt accrued before or after the settlement.

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

Stileman v.
Ashdown,    2
Atk. 477.
Middlecomb v.
Marlow,  ibid,
519.  Fitzer v.
Fitzer, id. 511,
and Walker v.
Burrows,     1
Atk. 93.

[*447]
Brown    v.
Jones, 1 Atk.
188.    Wheeler
v.       Caryl,
Ambl. 121.
White v. Sansom,   3  Atk.
410.

*Beaumont* v. *Thorp*, (1 Vesey, Sen. 27,) was the case of a prior creditor, and being merely voluntary, and not made in pursuance of any marriage articles, the settlement was held fraudulent.

*Beaumont* v. *Thorp*, 1 Ves. Sen. 27.

In the case of *Lord Townsend* v. *Windham*, (2 Ves. Sen. 1, 10,) which I believed is the last in point of time but one, I think it must be admitted, he goes the full length of the doctrine, that the legal presumption is conclusive; for he said he knew of no case on the 13 El., where a man, indebted at the time, made a mere voluntary conveyance to a child without consideration, and died indebted, but that it should be considered a part of his estate for the benefit of his creditors.

*Ld. Townsend* v. *Windham*, 2 Ves. Sen. 1, 10.

Cases before other judges than Hardwicke.

But it seems to me, that the doctrine of Lord Hardwicke has not been fully adhered to by subsequent judges; and that Lord Mansfield, in particular, if he did not wholly disregard it, followed the ancient principle, as more agreeable to the spirit and language of the statute.

*Stevens* v. *Olive*, 2 Bro. C. C. 90, 92.

In *Stephens* v. *Olive*, (2 Bro. Ch. Rep. 92,) the master of the rolls held, that although the settlor was indebted at the time, yet if the debt was secured by a mortgage, the settlement was valid; and in *George* v. *Milbank*, (9 Vesey, 193,) Lord Eldon admits, that if a settlement contains a provision for the payment of debts then existing, it will be good against a subsequent creditor, coming to impeach the settlement. But if a prior indebtedness was a conclusive presumption of fraud, and a subsequent creditor could be let in by showing that fact, how, I would ask, does a mortgage or a provision for the debt, affect the principle, except on the ground that they exclude the idea of intentional fraud?

*George* v. *Milbank*, 9 Ves. 191, 3.

*Lush* v. *Wilkinson*, 5 Ves. 384.

In *Lush* v. *Wilkinson*, (5 Vesey, 384,) a subsequent creditor came to impeach the settlement by proving prior debts, and the master of the rolls said, that proof of a single debt would not do; that every man must be indebted for the common bills of his house, though he pays them every week; that *it depended upon this : whether he was in insolvent circumstances at the time. This language has been considered a loose dictum; but whether authority or not,

[*448]

it shows a disposition to escape from that construction which made every debt, great or small, and under any circumstances, conclusive evidence of fraud.

The cases of *Cadogan* v. *Kennett,* (Cowp. 432,) and *Doe* v. *Routledge,* (Cowp. 705,) decided by Lord Mansfield, are, in my judgment, strongly opposed to the doctrine of Lord Hardwicke. The first was the case of a marriage settlement; and the defendant was a creditor at the time of the settlement. Lord Mansfield, in speaking of the statute, says, " such a construction is not to be made in support of creditors, as will make third persons sufferers. Therefore, the statute does not militate against any transaction *bona fide,* and where there is no imagination of fraud ; and so is the common law. The statute 27 El. c. 4," he says, " does not go to voluntary conveyances, merely as being voluntary, but to such as are fraudulent. A fair voluntary conveyance may be good against creditors, notwithstanding its being voluntary. The circumstance of a man being indebted at the time of his making a voluntary conveyance, is an argument of fraud. The question, therefore, in every case is, whether the act done is a *bona fide* transaction, or whether it is a trick and contrivance to defeat creditors." In the second case, he says, " the statute does not say, a voluntary settlement shall be void ; but that a fraudulent settlement shall be void. There is no part of the act of parliament which affects voluntary settlements, *eo nomine,* unless they are fraudulent." One circumstance, he says, should always be attended to; whether the person was indebted at the time he made the settlement : if he was, it is a strong badge of fraud. It will not be presumed Lord Mansfield was unacquainted with the doctrines of the courts in his time. He speaks of them himself, in this very case, and says, " a custom has prevailed and leant extremely, to construe voluntary settlements fraudulent against creditors; but, if the circumstances of the transaction show it was not fraudulent at the time, it is not within the meaning of the statutes." Language so decided, bearing so directly upon *the question, and coming from so high authority, must be entitled to great weight.

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*Cadogan* v. *Kennett,* Cowp. 432. *Doe* v. *Routledge,* id. 705.

[*449]

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

Nunn v. Wils-
more, 8 T. R.
521, 528.
Doe v. Martyr,
4 B. & P. 332.
Doe v. Man-
ning, 9 East,
59, Buckle v.
Mitchell,
18 Ves. 100, Hill
v. The Bishop
of Exeter, 2
Taunt. 69, 82.

American au-
thorities.

New York.

Jackson v.
Brush, 20
John. Rep. 5.

Manhattan Co.
v. Osgood, 15
John. Rep.
167, 8.

Verplank v.
Sterry, 12
John. Rep.
536, 554.

[*450]

But other judges, since those decisions, have spoken in a different language. In *Nunn* v. *Wilsmore*, (8 D. & E. 528,) lord *Kenyon* speaks of the deed as being either actually fraudulent or voluntary, from which the law infers fraud ; and in *Doe* v. *Martyr*, (4 B. & P. 332,) *Doe* v. *Manning*, (9 East, 59,) *Buckle* v. *Mitchell*, (18 Vesey, 100,) and *Hill* v. *The Bishop of Exeter*, (2 Taunt. 82,) which arose upon the 27th El., the voluntary conveyance was held fraudulent, upon the presumption of law. But it is evident the judges adhered to the rule with reluctance, and found themselves bound to conform to it, on the ground that the safety of too many estates depended upon it.

It may be well now to notice the view that has been taken of this subject, by some of our own judges, previous to the decision in this cause.

In *Jackson* v. *Brush*, (20 John. Rep. 5,) a verdict was taken, subject to the opinion of the court on a case. The deed set up by the plaintiff, and on which his claim rested, was held to be without any consideration ; and Mr. Justice Yates in giving the opinion of the court, adjudged it fraudulent from the circumstances. He declared it to be without consideration, and made with intent to defraud creditors, and void by the statute. In *The Manhattan Co.* v. *Osgood*, (15 John. Rep. 167, 8,) he said the law was well settled, that if a party execute a voluntary conveyance, indebtedness at that time was evidence of fraud. And in *Verplank* v. *Sterry*, (12 John. Rep. 554, *et seq.*) decided in this court, Mr. Justice Spencer has gone into the subject, and forcibly combatted the modern doctrine of the English courts upon the 27 El. He observed, that lord Ellenborough, in *Doe* v. *Manning*, did not present the opinion of lord Mansfield in *Doe* v. *Routledge*, in the strong point of view it merited ; and on examining the construction which had been given to the 13 El, he said, it is perfectly well settled, that to impeach a voluntary settlement made on a meritorious consideration, it is necessary that the seller should not only be indebted, but should be insolvent, *or in doubtful circumstances at the time. The 13 El. was intended to prevent the conveyance of property, with a design to defraud credi-

tors; and in *Sands* v. *Hildreth*, (14 John, 498,) I understand nim to mean, that the fraud contemplated by the statute is always a matter of fact, intent and purpose. And in *Jackson* v. *Ham*, (15 John. 263,) he says, the voluntary deeds which may be avoided by a subsequent purchaser under the 27 El. are such as are made with intent to deceive such purchaser; and this intent to deceive is evidenced by a voluntary conveyance coupled with a subsequent agreement to sell again.

The subject has been discussed in several of the state courts, and in some of them, the point has been expressly decided. *Salmon* v. *Bennett*, (1 Day's Con. Rep. N. S. 525,) was a case in the supreme court of errors of Connecticut. Chancellor Kent, in *Reade* v. *Livingston*, admits that it lays down a rule somewhat different from that which he had deduced from the English cases. The deed in question was from the father to the son, in consideration of natural affection. It was adjudged that a distinction existed, in the case of a voluntary conveyance, between the children of the grantor and strangers; and that mere indebtedness at that time, would not, in all cases, render a voluntary conveyance void as to creditors, when it was a provision for a child, and the deed was supported by the court against a prior creditor.

The case of *Bennett* v. *Bedford Bank*, (11 Tyng, 421,) arose in Massachusetts. It was there decided, that as there was no fraud in fact, the deed was good against a subsequent creditor, and all but such as were creditors at the time. But the question of prior indebtedness was not directly before the court. In *Parker* v. *Proctor*, (9 Mass. Rep. 390,) the same principle is recognized; and in *Harrison* v. *The Trustees of Phillips Academy*, (12 Mass. Rep. 462,) the question was, whether the grantee participated in the fraudulent intent of the grantor, to defraud his creditors. Parker, Ch. J., said, there was not conclusive evidence of that fact; and fraud was not to be presumed in a court of law.

In South Carolina, the law appears to be settled, that a voluntary conveyance upon a meritorious consideration *is only *prima facie* evidence of fraud, and may be repelled by circumstances. Thus, in *Hamilton* v. *Greenwood*, (1 Bay.

*Margin notes:*

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*Sands* v. *Hildreth*, 14 John. Rep. 498.

*Jackson* v. *Ham*, 15 John. 263.

Connecticut.

*Salmon* v. *Bennett*, 1 Con. Rep. N. S. 525.

Massachusetts.

*Bennett* v. *Bedford Bank*, 11 Mass. Rep. 421.

*Parker* v. *Proctor*, 9 Mass. Rep. 390.

*Harrison* v. *Trustees of Phillips Academy*, 12 Mass. Rep. 462.

South Carolina.

[*451]

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

*Hamilton* v.
*Greenwood*, 1
Bay. 173.

Rep. 173,) a settlement of several negroes was made by the husband on the wife, he at the same time having other personal property to a considerable amount. Afterwards, he mortgaged one of the negroes to the defendant, to secure a debt he owed previous to the settlement. The court said the transaction depended wholly upon the intent with which it was done; that fraud or not fraud, was a matter very proper for the consideration of a jury; that to say no voluntary deed, made for the support and advancement of a part of a man's family, was good, because a man happened to be embarrassed at the time, would be carrying the matter much farther than the principles of law or justice would warrant; that a fair voluntary conveyance might be good against creditors, notwithstanding it was voluntary; that the circumstance of a man's being indebted at the time, might be

*Teasdale* v.
*Reaborne*, 2
Bay. 546.
*Taylor* v.
*Heriot*, 4 Desauss. 232.
North Carolina and Kentucky.
*Smith* v.
*Niel*, 1 Hawks'
N. C. Rep.
341. *Trotter* v.
*Howard*, id.
320.
*Gilpin* v.
*Davis*, 2 Bibbs
Kent. Rep.
416.

an argument of fraud. So in *Teasdale* v. *Reaborne*, (2 Bay. 546,) and *Taylor* v. *Heriot*, (4 Desauss. 232.) The same doctrine appears to be settled in North Carolina and Kentucky. In *Smith* v. *Niel*, (1 Hawks, 341,) it is held that fraud or not fraud under the statute, is a question of fact and not of law. (*Trotter* v. *Howard*, 1 Hawks, 320, S. P. and see *Gilpin* v. *Davis*, 2 Bibb, 416.) *Taylor* v. *Eubank*, (3 Marshall Rep. 239, 241,) is in point that the question of fraud, where the settlor is indebted at the time, must go to the jury.

*Taylor* v.
*Eubanks*, 3
Marsh. Kent.
Rep. 239.
Virginia.
*Alexander* v.
*Deneale*, 2
Munf. 341, 2.

The case of *Alexander* v. *Deneale*, (2 Munf. Rep. 342,) determined by the supreme court of appeals of Virginia, was cited by the counsel for the defendant in error, as establishing a contrary doctrine; but I think not. The only question was, whether the vendor of chattels, retaining the possession after an absolute sale, rendered it fraudulent and void *per se* as to creditors? The court held it to be so according to modern decisions.

United States.
[*452]
*Hinde's Lessee*
v. *Longworth*,
11 Wheat.
211.

*Hinde's lessee* v. *Longworth*, (11 Wheat. 211,) came before the supreme Court of the United States, on error *to the circuit court of Ohio. It was the case of a prior creditor; and judge Thompson, in giving the opinion of the court upon the exceptions taken in the court below, says, the evidence offered by the plaintiff to repel the presumption of fraud, was improperly rejected by the court; that a deed from a

parent to a child, for the consideration of love and affection, is not absolutely void as against creditors; that it may be so under certain circumstances; but that the mere fact of being in debt to a small amount, would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances, and unembarrassed; and that the gift was a reasonable provision according to his state and condition in life, and having enough for the payment of the grantor's debts; that the want of a valuable consideration may be a badge of fraud, but not conclusive, and may be repelled by evidence. He also observed, "it is said that a voluntary deed is void only as to antecedent and not subsequent creditors, unless made with a fraudulent intent; and this appears to be the doctrine of this court as laid down in *Sexton* v. *Wheaton*, (8 Wheaton's Rep. 242,) after a review of the leading authorities on this question." It does not strike me that the judge, by this observation, means to say that the doctrine of the court goes so far as to make void all voluntary conveyances, merely upon the ground of prior indebtedness; for he says afterwards, in the same page, that the accounts might be looked to for the purpose of showing that Doyle, the elder, was in debt at the date of the deed; but whether to an extent which would avoid the deed, must depend on circumstances which are not to be inquired into by the court. And I would ask, whether what is noticed here, as the doctrine of the court in *Sexton* v. *Wheaton*, is not rather to be looked upon as a passing admission of the chief justice in that cause, that such was the modern doctrine in England? for it appears to me that the point did not necessarily come before him in that cause. The grantor there was not indebted at the time of the conveyance; and the principal inquiry of the *chief justice was, whether there was sufficient evidence of fraud to impeach the settlement in favor of a subsequent creditor. He refers to the principal authorities cited by chancellor Kent in *Reade* v. *Livingston*, and remarks generally, that "in construing the statute 13 Eliz. the courts have considered every conveyance not made on consideration, deemed valuable in law, as void against previous creditors; that with respect to

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

[*453]

subsequent creditors, the application of the statute appear-
ed to have admitted of some doubt."

Seward
v.
Jackson.

New York.
Bissel v. Hop-
kins, 3 Cowen,
166.

Another principle arising upon the statute had been
fluctuating in our courts, until it was finally settled by the
supreme court in *Bissel* v. *Hopkins*, (3 Cowen, 166.) This
was, whether possession of goods continuing in the vendor
after sale, was conclusive, or only *prima facie* evidence of
fraud as to creditors. It was there settled, after an exami-
nation of the principal authorities, that it is only a presump-
tion, and may be explained, agreeably to the doctrine of
lord Mansfield, in *Cadogan* v. *Kennett*, and contrary to the
modern English doctrine, as laid down in *Edwards* v.
*Harben*, (2 T. R. 587.)

If we are to adopt a legal presumption as conclusive in
one case, arising upon the statute, why not in another? I
do not see why possession in the vendor of a chattel, is not
as conclusive evidence of fraud, as a voluntary conveyance
made upon the meritorious consideration of blood and
affection. The delivery of possession, is considered the
very perfection of the sale of chattels; without which, a
secret trust between the parties would be a most effectual
means of fraud.

Summary of
conclusions.

[*454]

From this view of the law, imperfect as it is, I think the
following conclusions may fairly be drawn: That the an-
cient decisions are nearly uniform in construing the volun-
tary conveyance as only *prima facie* evidence of fraud;
that this doctrine is supported by the great authority of
lord Mansfield; that the legal presumption is conclusive, is
to be deduced from the decisions of lord Hardwicke; that
some of his successors have followed him, and others have
materially narrowed his ground; that among the *state
authorities in this country, with the exception of our own,
there is a striking preponderance in favor of the ancient
doctrine. Do the English decisions, then, previous to the
19th of April, 1775, settle the question in favor of the
conclusive presumption, with so much clearness and cer-
tainty, that this court is bound by them, as by common
law authority, in construing an act of the legislature, passed
in 1787? In my judgment they do not; but there is, on

the other side of the question, great weight of authority, supported by the obvious meaning and spirit of the act.

Believing, therefore, as I do, that there is no settled authority that binds this court upon the question, and that the judgment of the supreme court is incorrect, being founded upon a principle of legal fraud, which entirely disregards the intent and purpose of the conveyance, I am constrained to dissent from it, as inconsistent with the declared and manifest intention of the legislature. And were it necessary for the court to lay down a general rule, giving a true and rational construction to the act, I should say, that a voluntary conveyance in consideration of blood and affection, by one indebted at the time, was *prima facie* only, and not conclusive evidence of fraud.

*A voluntary conveyance by a debtor, in consideration of blood and affection, is prima facie only, and not conclusive evidence of fraud.*

But I do not consider the deed in this case as purely voluntary. It is, in good sense, a deed, in part upon a meritorious, and in part upon a valuable consideration. The sum of ten thousand dollars, expressed in the deed, may be considered the fair value of the farm. The grantee, on receiving the deed, executes a bond to the grantor, to secure an annuity of five hundred dollars during his life, and bonds to the daughters of the grantor, for $4452 50, payable in six months after his death. Admitting that the annuity, which was regularly paid for four years, is to be considered only as a fair equivalent for the rents and profits of the farm, upon what principle is the consideration not to be deemed valuable, as far as the bonds to the daughters go? It cannot be necessary, to make a consideration valuable, that money should be paid down. Security, or sufficient personal responsibility, would amount to the same thing. Blackstone, in giving the requisites of a valuable *consideration, (2 Bl. Com. 443,) reckons marriage, money, work done, or other reciprocal contracts.

*But the deed in question is not purely voluntary. It is part on a meritorious, and part on a valuable consideration.*

*What is a valuable consideration.*

[*455]

Philander Seward, when he gave these bonds, was perfectly solvent. He had an estate worth ten thousand dollars, and there is no evidence of any other charge upon it, except these bonds and the annuity. In my judgment, it is not the same thing as if the father had parcelled out the estate among his children, reserving an annuity from each

ALBANY,
Dec. 1826.

Seward
v.
Jackson.

in proportion. In that case, if the deed should fail, each child would lose an individual portion, and have nothing. Here the daughters get the purchase money to the amount of the bonds, and lose nothing; but the grantee loses the whole farm and pays the bonds besides. I know of no principle upon which these bonds can be avoided. To say the obligor will not be able to pay them, makes nothing against the argument.

Of the policy of the rule which makes a deed of a settlor only *prima facie* fraudulent against creditors.

I do not, however, rely upon this view of the case. I take the broader ground on which I set out. I am aware that the policy of permitting the voluntary conveyance to be only *prima facie* evidence of fraud, has been questioned. It has been said, it would be embarrassing, if not danger-ous to the rights of creditors, and prove an inlet to fraud. If it were really so, and the law has not gone far enough for the support of creditors, it belongs to the legislature, and not the courts to extend it. But how would the prin-ciple be embarrassing, and prevent the detection of fraud? When the creditor comes to impeach the deed, he is sup-ported, in the very outset, by the presumption that it is fraudulent; and this presumption he can fortify and strengthen, by every fact and circumstance that has a ten-dency to show the fraud; and all this must be repelled by evidence so clear and irresistible, as to leave no doubt of the fairness and honesty of the transaction; and where there is actual fraud, such as in my view comes within the act, I believe the rights of the creditor will be safe before a jury. It is true, there might be cases where injustice would be done to a creditor, and so it must be in all human institutions. But would not the other rule sometimes *produce an evil? I think it would; and that the case be-fore us is evidence of it. When William Seward trans-ferred and guaranteed to Van Wyck the judgment against William Seward, junior, it could not reasonably be sup-posed, that the property which had been conveyed to the latter by Van Wyck, would not be amply sufficient to meet that judgment. By that conveyance, William Sew-ard, junior, became the owner of 2800 acres of land in the counties of Essex and Warren, valued in the conveyance

[*456]

at $11,200; and 188 acres in the county of Oneida; at $1800, besides the other property; and it was baffling human foresight that all these lands would produce, at sheriff's sale, only about $574. Under these impressions of perfect safety, and before executions had been issued against the property of William Seward, junior, the old man, near the close of his life, sets down, in good faith and honesty, to divide his property among his children, upon the principles of equal and exact beneficence. In that settlement, the son, in equal good faith, enters into bonds to pay his sisters their shares. But it turns out eventually, that by the silent operation of a principle of fraud in law, without any fault on their part, this settlement, with its attendant contracts and stipulations, is to be torn from its foundations. It does appear to me, the evil is not so trivial as to be disregarded.

I am accordingly of opinion, that the judgment of the supreme court ought to be reversed.

*The Court* concurring in the result of these opinions, except MALLORY, Senator,

The judgment of the supreme court was reversed.

*ALBANY,*
*Dec. 1826.*

Dutch Church
of Albany
*v.*
Bradford.

For reversal,
24, for affirmance, 1.