## JOHN C. BRIGGS *vs.* GEORGE PARKMAN.

A mortgage of a trader's stock in trade is not fraudulent *per se*, though it is provided therein that, until condition broken, he may retain in his possession and use all the mortgaged property, without hindrance or interruption from the mortgagee ; and though there is an oral agreement of the parties, at the time the mortgage is executed, that the mortgagor may sell and dispose of the mortgaged property and apply the proceeds to his own use, he promising that if he should make large sales thereof, he would add to the mortgagee's security by other property. The presumption of fraud arising from such a mortgage and agreement may be repelled by satisfactory evidence.

An assignment, under *St.* 1838, *c.* 163, vests in the assignee only the property which the debtor, at the time of the first publication of the notice of the issuing of the warrant against him, could have sold, &c. or which might have been taken on execution against him. Therefore, where a debtor's goods were mortgaged before an assignment under said statute, and the mortgage was recorded after the assignment but before publication of notice, it was held that the mortgagee was entitled to hold the goods against the assignee.

THIS was an appeal from a decree of a master in chancery in this county, by which the claim of said Parkman, under a note and a mortgage of personal property, given to him by Samuel H. Loring, was allowed, and the mortgaged property directed to be sold and the proceeds paid to said Parkman, pursuant to § 3 of the act for the relief of insolvent debtors. *St.* 1838, *c.* 163.

The following report of the case was made by *Morton*, J. before whom it was tried : On the 6th of July, 1839, said Loring, in consideration of a loan of $ 3500 and the transfer to him, by said Parkman, of certain leases, agreed to give his promissory note to said Parkman, for $ 5800, payable in sixty days, with interest, and a mortgage, to secure payment thereof, of the principal part of said Loring's stock in trade, in Boston, he to continue in possession and make sales of said mortgaged stock, in the ordinary course of business, and apply the proceeds to his own use. During the negotiation which preceded this agreement, said Loring declined to account with said Parkman for the proceeds of sales ; stating that he should require them for his own use, but representing that he should not, at that season, make any large sales, and that if he should, he would add to the said Parkman's security by other property ; that he con

templated a new arrangement with a person who was to be his partner, and who was to advance money within a short time ; and that he (Loring) would endeavor to pay half the said note in thirty days.    The parties thereupon agreed, as above set forth, and also that said Parkman should examine the amount of sales at the end of thirty days, for the purpose, if necessary, of obtaining further security ; and the note and mortgage were thereupon executed and delivered by said Loring.    The nominal amount of the schedule annexed to said mortgage was $ 9115·42.    After a proviso that the deed of mortgage should be void, if said Loring should pay said note, with interest, in sixty days, the instrument concluded thus :  " Provided also, that until default of or in the payment of said sum of $ 5800, and interest, it shall and may be lawful for said Loring, his executors, &c. to have, retain in his possession, and use, all and singular, the property mortgaged as aforesaid, without the hindrance or interruption of said Parkman or his assigns."

At the time of executing said mortgage, said Loring was an inhabitant of Roxbury, and resided there with his family ; and he testified that this fact was known to said Parkman ; but in the mortgage, said Loring was described as of Boston. Said mortgage was recorded on said 6th of July, by the clerk of the city of Boston, but was not recorded by the clerk of the town of Roxbury, nor left with him for record, until the 15th of said July, as hereinafter mentioned.   On the 13th of said July, said mortgaged property was attached in six suits by creditors of said Loring, and in the forenoon of the 15th, in suits by four other of his creditors.    The officer, who served the writs, testified that the first writ was put into his hands by said Briggs, (the appellant,) who at the time knew of said mortgage, and that two or three of the first attaching creditors also knew of it.

On said 15th of July, said Loring applied to a master in chancery, under the *St.* of 1838, *c.* 163, and thereupon, at thirty minutes past one o'clock, P. M. of that day, the said mortgaged property, and all the property of said Loring, was taken into possession by Watson Freeman, as messenger, under a warrant duly issued by said master. After said Freeman took possession

of said property, said Parkman, who was present, wrote and delivered to him the following notice : "I hereby notify you that I have a mortgage on the goods and merchandise of Saml. H. Loring, for the sum of $5800 and interest from July 6th current, recorded in clerk's office of this city. July 15th, 1839. George Parkman." At six minutes before three o'clock of the same day, said Parkman called on said Freeman, and asked leave to add, and did add, the words "and of Roxbury," at the end of said written notice ; and, at thirty minutes past three o'clock, of the same day, left said mortgage for record with the town clerk of Roxbury.

The attachments made by said creditors being dissolved by the proceedings under the said statute, several of them, other than the two or three who first attached, proved their debts against said Loring, under said statute.

After the execution of said mortgage, and before said 13th of July, said Loring had sold of the mortgaged property to the amount of $400 or $500, and applied the proceeds to his own use.

The first publication of notice by the messenger, pursuant to § 2 of said statute, was made in newspapers published in Boston, on the morning of the 16th of said July.

John C. Briggs, the appellant, was duly elected assignee of the estate of said Loring, at the first meeting of his creditors held on the 27th of said July, and accepted the trust.

Upon the foregoing facts, the appellant contended, that as said mortgage was not left for record with the clerk of the town of Roxbury until after said attachments, and after said messenger had, with the knowledge of said Parkman, taken possession of the property, the property passed to the appellant, as assignee, discharged of the mortgage, as between said Parkman and said assignee, and a part or all of said Loring's creditors. The appellant further contended, that the aforesaid agreement between said Loring and Parkman, at the time when said mortgage was given, that said mortgagor might sell and dispose of the property, and apply the proceeds to his own use, constituted in law a fraud, and rendered said mortgage void as against said assignee and the creditors of said Loring.

A verdict was taken for the appellee, and the questions of law upon the foregoing facts were reserved for the consideration of the court. It was agreed by the parties, that the court might draw any inferences from the facts, that might be drawn by a jury.

*Bartlett*, for the appellant, submitted that the mortgage was *ipso facto* void, as against the creditors of Loring, without regard to consideration or moral intent. The instrument purported to convey the entire title to the property, defeasible on the performance of a condition ; but there was an express trust in favor of the grantor, reaching to the full extent of the property ; and the trust was secret, that is, tacit, and repugnant to the terms of the written conveyance.

This is not a case where there are badges of fraud, to be passed upon by a jury, by way of inference ; and there is nothing left to be inferred or deduced by the court. The trust is explicit, on the face of the facts reported, though it does not appear in the conveyance. 2 Kent Com. (3d ed.) 515 *et seq Twyne's case*, 3 Co. 83, 2d res. *Coburn* v. *Pickering*, 3 N. Hamp. 424. *Johnson* v. *Whitwell*, 7 Pick. 71. *Divver* v. *McLaughlin*, 2 Wend. 596. *Bartlett* v. *Williams*, 1 Pick. 295. *Holbrook* v. *Burt*, 22 Pick. 546. *Simpson* v. *Mitchell*, 8 Yerg. 417.

The assignee, under *St.* 1838, *c.* 163, does not merely succeed to the debtor's rights, and stand as he stood, but he takes the property as a purchaser. By § 5, the assignment vests in the assignee all the property of the debtor which might have been taken in execution on a judgment against him. If therefore the mortgage was void as against creditors, the assignee is entitled to the property mortgaged, though the insolvent himself could not have avoided the mortgage. And if the mortgage had not been fraudulent in law, yet the mortgaged property might have been taken in execution before the mortgage was recorded.

The proceedings of the mortgagee in this case were contrary to the policy of the Rev. Sts. *c.* 74, § 5, as to recording mortgages. See also Rev. Sts. *c.* 59, § 28. *Pettibone* v. *Griswold*, 4 Connect. 158.

Briggs v. Parkman.

The assignee has the better title, as he obtained possession before the mortgage was recorded, and before the appellee obtained possession under it. The appellee had notice of th proceedings against Loring, before he gave notice to the messenger, or procured the mortgage to be recorded in Roxbury; and he could not have taken the property from the messenger, by way of obtaining possession, even if his mortgage had been recorded. See §§ 1, 5, and 6, of *St.* 1838, *c.* 163. This statute, like the bankrupt laws in England, is to be construed favorably for creditors, and to suppress fraud. *Worseley* v. *De Mat tos,* 1 Bur. 474.

If the assignee became owner, only from the publication of notice, yet the appellee was bound by his actual notice of the proceedings against Loring. *Cushing* v. *Hurd,* 4 Pick. 253. *Mitford* v. *Mitford,* 9 Ves. 100. *Jones* v. *Gibbons,* 9 Ves. 407. *Ex parte Coles,* 1 Dea. & Chit. 100.

*E. Blake,* for the appellee. The mortgage was not fraudulent *per se.* In this Commonwealth, there never has been what is sometimes called fraud in law, except perhaps in cases of conveyances without any consideration. In all other cases, if not in that, fraud is a question of fact. *Brooks* v. *Powers,* 15 Mass. 244. *Homes* v. *Crane,* 2 Pick. 610. *Gould* v. *Ward,* 4 Pick. 104. *Jackson* v. *Seward,* 5 Cow. 67. *S. C.* 8 Cow. 406. *Jackson* v. *Peek,* 4 Wend. 303. *Jackson* v. *Timmer man,* 7 Wend. 438. *Martindale* v. *Booth,* 3 Barn. & Adolph. 498.

The mortgage was recorded in Roxbury in season to preserve the mortgagee's rights; notice to him of the proceedings against Loring could not prevent his recording it with full legal effect. Besides, the assignee had knowledge of the mortgage, when the assignment was made. So had the messenger, when he took possession of the property. By *St.* 1838, *c.* 163, § 5, the debtor's property vests in the assignee when the first publication of notice is made. That publication was made one day after the mortgage was recorded in Roxbury. The case of *Cushing* v. *Hurd,* cited for the appellant, is therefore an authority in favor of the appellee. See also *Warden* v. *Adams,* 15 Mass. 233. *McMechan* v. *Griffing,* 3 Pick. 153.

WILDE, J. This is a case of appeal from an order or decree of a master in chancery, made in pursuance of the 3d section of *St.* 1838, *c.* 163, entitled "an act for the relief of insolvent debtors, and for the more equal distribution of their effects." The general question to be decided is, whether the mortgage deed to the appellee from the insolvent debtor, made before his application to the master in chancery to be allowed to take the benefit of said act, is a valid deed in law, or whether the title to the goods mortgaged passed by the assignment of the debtor's property to the appellant, the assignee, notwithstanding the mortgage.

At the trial of the cause in this court, it appeared that it was agreed between the parties to the mortgage, that Loring, the said debtor, should mortgage to the appellee the principal part of his stock in trade, and that the mortgagor should continue in possession of the goods mortgaged, and make sales of the said property in the ordinary course of business, and apply the proceeds to his own use : He at the same time representing, that he should not at that season make any large sales, and if he should, that he would add to the amount of the mortgagee's security by other property.

The counsel for the assignee maintains, that this agreement vitiated the mortgage, and rendered it void as to the creditors of Loring ; that such an agreement is fraudulent in law, or is conclusive evidence of fraud, not open to explanation, however fair and honest the intention of the parties may have been. In regard to the objection in relation to that part of the agreement respecting the mortgagor's continuing in possession of the mortgaged property, the law, as it is considered in this Commonwealth, has long been well established, and it is no longer open to discussion. It has always been held by this court, that where a vendor continues in possession of the goods sold, after the sale, with the consent of the vendor, such a possession is only a badge or presumptive evidence of fraud, which it is proper to submit to a jury, and which may be explained, and the inference of fraud repelled by other evidence. On this question there have been many conflicting decisions in other courts ; but the

question is now settled in the State of New York, in conformity with the doctrine as held in this Commonwealth ; and such appears to be the doctrine as now held in England. *Bissell* v. *Hopkins*, 3 Cow. 166. *Seward* v. *Jackson*, 8 Cow. 406. *Kidd* v. *Rawlinson*, 2 Bos. & Pul. 59. *Martindale* v. *Booth*,' 3 Barn. & Adolph. 498. *Hinde* v. *Longworth*, 11 Wheat. 199. *Arundell* v. *Phipps*, 10 Ves. 145. *Latimer* v. *Batson*, 4 Barn. & Cres. 652.

In the case of *Bissell* v. *Hopkins*, it was settled, after an examination of the principal authorities, that the possession of goods continuing in the vendor after the sale was only presumptive evidence of fraud, which might be explained by other evidence. And we do not understand the counsel for the assignee to deny the doctrine thus established ; but he relies on the other part of the agreement, which he insists is not merely a badge of fraud, but that it vitiated the security and rendered it void *per se* as to creditors. But we consider the agreement as to the mortgagor's continuing in possession of the goods mortgaged, after the mortgage, and the permission to sell a part of the property, and to apply the proceeds to the mortgagor's own use, as evidence of the same character, and as tending to raise the same presumption ; the one part of the agreement may raise a stronger presumption of fraud than the other, but this is a difference only in the weight of the evidence. Both parts of the agreement tend to prove a fraudulent intent, but both may be explained consistently with honest intentions and fair dealing ; and if they may be so explained, and the inference of a fraudulent intent repelled, there seems to be no reason for excluding the explanatory proof. It has been argued, that the necessary consequence of the agreement was to deceive and defraud the creditors of the insolvent debtor ; and that a party must always be presumed to have intended that which necessarily must follow from his act. But it was not a necessary consequence of the agreement that creditors would be defrauded ; and even if that were the necessary consequence of the agreement, it would not follow that such a presumption might not be rebutted by evidence.

The question to be decided is, whether the mortgage deed

was given with the fraudulent intent to cover the property, and thus to delay or defraud creditors ; and this question is to be determined by the whole evidence, presumptive and explanatory. In *Cadogan* v. *Kennett*, Cowp. 432, Lord Mansfield says, that " the statute does not militate against any transaction *bonâ fide*, and where there is no imagination of fraud. And so is the common law. The question, therefore, in every case is, whether the act done is a *bonâ fide* transaction, or whether it is a trick and contrivance to defeat creditors."

The next question to be determined is, whether upon the whole evidence it appears, or may be reasonably presumed, that the mortgage in question was made with any fraudulent intent to defeat or delay creditors. This question is submitted to the court by the agreement of the parties.

If the mortgage deed to the appellee had been an absolute sale and conveyance, the agreement that the vendor should be allowed to sell any part of the property, and to appropriate the proceeds to his own use, would be strong presumptive evidence of fraud, and for aught that appears would be conclusive. But as the conveyance was only by way of security, and as the goods, according to the estimated value, were more than sufficient to secure the mortgage debt ; and as it was agreed by the mortgagor that he would not make any large sales, or if he did, that he would add to the amount of the mortgagee's security by other property — that he would pay half the note in thirty days, and at the end of thirty days the mortgagee should have a right to examine the amount of sales — we are of opinion, taking into consideration all these circumstances, that there is no reason for the inference of fraud arising from the agreement, but that it is repelled by satisfactory evidence.

The next question raised by the report of the evidence depends on the construction to be given to the 1st, 5th, and 6th sections of the insolvent law. *St.* 1838, *c.* 163. The 1st section provides, that the messenger shall take possession of all the estate, real and personal, of the debtor, excepting such as may be by law exempted from attachment ; and this was done on the 15th of July, at thirty minutes past one o'clock, and before the

mortgage to the appellee was duly recorded. The mortgage had been before recorded in Boston, but was not recorded in Roxbury, where the mortgagor resided, until thirty minutes past three o'clock of the same 15th day of July. By the 5th section, it is provided that the judge of probate shall assign an l convey to the assignees " all the estate, real and personal, of the debtor, excepting such as may be by law exempted from attachment ; which assignment shall vest in the assignees all the property of the debtor, both real and personal, which ne could by any way or means have lawfully sold, assigned or conveyed, or which might have been taken in execution on any judgment against him, at the time of the first publication of the notice of issuing the warrant " to the messenger. This publication of notice by the messenger was made on the morning of the 16th of July, the day after the appellee's mortgage had been duly recorded. By the 6th section, the messenger is required, as soon as may be after his appointment, to demand and receive from the debtor, and from all other persons, all the estate in his or their possession respectively, which by the previous sections is ordered to be assigned.

There appears to be no difficulty in ascertaining the true meaning and construction of these sections, so far as they relate to the question under consideration. There is an apparent discrepancy between the 1st and the 6th sections, the 1st requiring the messenger to take all the debtor's property, excepting such as may be by law exempted from attachment, and by the 6th section he is to take all the debtor's property which was liable to be assigned. But this difference in the language of the two sections is not material ; it must, we think, have been intended by the 6th section to limit the generality of the provision in the first section, which thus limited corresponds with the provision in the 5th section. But however this may be, the question to be determined depends on the construction of § 5, in regard to which there can be no doubt. The language is express, and limits the assignment to the debtor's property at the time of the first publication of the notice of issuing the warrant to the messenger. At that time, the appellee's mortgage had been record-

ed according to law, and consequently the property in dispute could not vest in the assignee.

It is however denied by the counsel for the assignee, that the mortgage deed has been recorded according to law ; because the mortgagee had notice, before he recorded his deed, of the application of the mortgagor to be allowed to take the benefit of the insolvent law, and of the proceedings had thereon, and that the messenger had taken actual possession of the goods mortgaged.

If the mortgage had been made after such notice, there would be great weight in the objection ; but the mortgage deed was made before these transactions, was a *bonâ fide* conveyance, and unquestionably the mortgagee had a right to complete his title. At the time the deed was recorded, the assignee had obtained no title ; nor does the title since obtained reach back to the time of the record. So that the case of *Cushing* v. *Hurd*, 4 Pick. 2.3, is in point, and is conclusive. Indeed there does not appear to be either law or equity in favor of the claim of the appellant in behalf of the creditors. The appellee paid to the debtor over five thousand dollars, which has increased the amount of the debtor's assets, to be distributed among his creditors, and they claim also the mortgaged property, leaving the mortgagee to take his share with the other creditors, although he never trusted to the personal credit of the mortgagor. This we think is not an equitable claim, and to avoid it the mortgagee had a perfect right to record his mortgage. If this mortgage had been given to secure a prior debt, the equity of the case would have been different ; and if it had been so made by the debtor in contemplation of his becoming insolvent, and of obtaining a discharge under the provisions of the insolvent law, the mortgage would be void as to creditors, by the 10th section of the act. But by a proviso, this clause is not to apply to any security given for the performance of any contract, where the agreement for such security is part of the original contract, and the security is given at the time of making such contract. This mortgage therefore would have been a valid security, although it had been made by the debtor, in contemplation of insolvency.

and of obtaining a discharge from his creditors, unless that intention had been known by the mortgagee. And this provision seems to be founded on equitable principles and sound policy. Without this proviso, no one could rely on his security, however fairly and honestly it had been obtained.

Upon the whole matter, therefore, we are of opinion that the decision of the master was correct, and must be affirmed